UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKAT) TAX REFUND LITIGATION<br><br>This document relates to:<br>Case No. 18-cv-4047(LAK) (S.D.N.Y. Master Docket) | 18-MD-2865 (LAK)<br><br>ECF Case |

**CONSOLIDATED DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO CONSOLIDATED DEFENDANTS' MOTION TO DISMISS THE COMPLAINTS**

**CAPLIN & DRYSDALE, CHARTERED**

Mark D. Allison
Zhanna A. Ziering
600 Lexington Avenue
21st Floor
New York, New York 10022
Tel: (212) 379-6000

Consolidated Defendants respectfully submit this memorandum of law in reply to the Plaintiff SKAT's opposition to the Defendants' motion to dismiss.[1]

## ARGUMENT

**I.      SKAT'S Claims Are Barred by the Revenue Rule.**

The underlying legal issue in this case is whether the Defendant Plans had beneficial ownership of stock in Danish companies issuing dividends, as defined and interpreted under the tax laws of Denmark, entitling them to the tax refunds at issue. This inquiry into beneficial ownership depends on the Court's analysis, interpretation, application, and enforcement of Danish tax law, including section 23.1 of the Capital Gains Tax Act of Denmark and section C.B.2.1.6.1 of The Legal Guide, as well as the other authorities cited and relied on by SKAT in its determination letters issued to the Defendants. *See* Ex. 4-5, 7-13.[2] For this case to proceed, the Court must immediately wade into the middle of ongoing, politically-contentious Danish administrative tax proceedings to determine this exact question. This outcome "is precisely the type of meddling in foreign affairs the revenue rule prohibits." *Republic of Ecuador v. Phillip Morris Cos.,* 188 F. Supp. 2d. 1359, 1363 (S.D. Fla. 2002).

SKAT—the "agency of the government of Denmark charged with the assessment and collection of Danish taxes," TBLPP Compl. ¶ 2—tries to circumvent the Revenue Rule's obvious application to this case by characterizing its allegations as a simple theft instead of a disputed issue of beneficial ownership under Danish tax law. But SKAT's argument is inconsistent with the Complaints, SKAT's own tax refund application form (Form 06.003 ENG, Claim to Relief from

---

[1] "Defendants" refers to the defendants in the 53 consolidated actions pending before this Court. "Plans" refers to the U.S. pension plan defendants. "Authorized Representatives" refers to the defendants who acted as Authorized Representatives on behalf of the Plans. "Incorporators" refers to the defendants who incorporated the Plans' sponsors.
[2] Exhibits cited to herein refer to the exhibits attached to the Declaration of Mark D. Allison, dated August 15, 2018 (Ex. 1-61) and the Supplemental Declaration of Mark D. Allison, dated October 30, 2018 (Ex. 62-65).

Danish Dividend Tax), SKAT's pleadings in other jurisdictions, and with Revenue Rule jurisprudence. SKAT carefully omitted the word "beneficial" from the Complaints in reference to the ownership of the shares, *see* TBLPP Compl. ¶¶ 37, 48. Yet, SKAT's tax refund application form (Form 06.003 ENG), the filings of which are at the center of this dispute, explicitly required the identification and signature of the *beneficial* owner of the shares (rather than that of the "owner"). *See* Ex. 3 at 2.

Nor can SKAT's argument be reconciled with its position in its pleadings elsewhere in the world. For instance, contemporaneously with its filings in the U.S. courts, SKAT filed similarly-styled complaints in the U.K. against multiple parties involved in the alleged scheme and several U.S. pension plans. In the U.K. complaint, SKAT drew a distinction between ownership and beneficial ownership, stating that "[t]he foreign entity *was not the beneficial owner of, or did not own shares in*, a Danish company as represented, had not *beneficially* received dividends net of withholdings tax, and was not entitled to a refund of withholding tax." Ex. 62, *SKAT v. Indigo Global Partners Ltd., et al.*, Cl. No. CL-2018-000404, ¶ 8 (emphasis added); *see also* ¶ 6, 10.1A, 10.2. This language, coupled with SKAT's omission of the word "beneficial" in its U.S. pleadings, clearly indicates SKAT's awareness that the issue of whether the Plans were beneficial owners of the shares must be decided under Danish tax law before this (or any other) Court could determine whether the alleged fraud occurred, which directly implicates Danish tax law as noted above. In fact, in one case, SKAT originally filed a complaint in this Court against Jonathan Godson alleging, like in all other complaints, that the Plan did not own the shares at issue, but then voluntarily dismissed that complaint against Godson as the Authorized Representative and refiled a similar one against him in the U.K., this time alleging lack of *beneficial* ownership. *See* Compl. ¶¶ 18, 37, 50, *SKAT v. The Sector 230 LLC 401K Plan*, Dkt. No. 1, 1:18-cv-04771; *id.* Dkt. No. 11; Ex. 62,

2

¶¶ 8, 6, 10.1A, 10.2. This distinction is critical because a shareholder may have beneficial ownership of an asset for tax purposes as a result of their economic or possessory interest or other attributes in such asset, even if there is not legal ownership of the asset.

Whether the Plans were beneficial owners of the shares, without regard to legal ownership, can only be determined by reference to Danish tax law. *Dept. of the Treas. Technical Explanation of the Protocol Signed at Copenhagen on May 2, 2006 Amending the Convention Between the United States of America and the Kingdom of Denmark For the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income Signed at Washington on August 19, 1999*, p. 3 ("The term 'beneficial owner' is not defined in the Convention, and is, therefore, defined as under the internal law of the country imposing tax (*i.e.*, the source country). The beneficial owner of the dividend for purposes of Article 10 [Dividends] is the person to which the dividend income is attributable for tax purposes under the laws of the source State.").[3]

Additional facts also support the conclusion that SKAT's complaint entirely concerns enforcement of Danish tax laws. SKAT does not deny that it is a Danish tax agency charged with collection of Danish taxes; as such, it can *only* be a party in a court proceeding in several limited types of actions, such as actions to collect taxes, the calculation of succession tax, and actions for collection of arrears or damages. Ex. 63, The Legal Guide 2018-2, A.A.10.3.2; *see also* Ex. 64, The Danish Tax Administration Act, § 1. Nor does it deny that the Defendants obtained their tax refunds through the Danish tax administrative process. TBLPP Compl. ¶¶ 1, 4, 5. Further, in investigating this matter, SKAT has been utilizing tax administrative tools available through the

---

[3] The determination of beneficial ownership often involves a challenging consideration of legal and factual issues, as is reflected in the significant U.S. tax litigation on these principles. *See, e.g., Frank Lyon Co. v. United States*, 435 U.S. 561, 98 S. Ct. 1291 (1978) (tax ownership of property in sale-leaseback transaction); *Altria Group, Inc. v. United States*, 658 F.3d 276 (2d Cir. 2011) (same); *Bailey v. Comm'r*, 912 F.2d 44 (2d Cir. 1990) (tax ownership of film); *Rosenfeld v. Comm'r*, 706 F.2d 1983 (2d Cir. 1983) (tax ownership in gift-leaseback transaction); *Estate of Thomas v. Comm'r*, 84 T.C. 412 (1985) (tax ownership of leased computer equipment); *Doherity v. Comm'r*, T.C. Memo. 2009-99, 87 T.C.M. (CCH) 1512 (2009) (tax ownership of pay phones and ATM machines).

3

U.S.-Denmark Income Tax Treaty (the "Treaty"), including through the Exchange of Information provisions of the Treaty.[4] The IRS responded and provided information under that provision of the Treaty. *See, e.g.*, Ex. 65. Finally, in its final determination letters, issued in April and May 2018, SKAT granted each of the Plans a right to appeal administratively SKAT's determination to Skatteankestyrelsen, or the Tax Appeals Agency, which the Plans did. Ex. 4, p. 17, Ex. 5. Defendants' appeals were accepted by the Danish Tax Appeals Agency, which only has jurisdiction to decide tax cases. Ex. 6; Ex. 64, The Danish Tax Administration Act, § 4a.

SKAT should not be allowed to characterize its own proceedings in Denmark and elsewhere around the world as pertaining to a tax dispute while denying such reality before this Court in order to avoid the application of the Revenue Rule. It is the method by which the alleged fraud occurred—not SKAT's self-serving characterization—that is relevant here. *See Republic of Colombia v. Diageo North America Inc.*, 531 F. Supp. 2d 365, 394-399 (E.D.N.Y. 2007) (holding that a foreign sovereign's claims for recovery of lost revenue and profits resulting from an underlying illegal tax scheme, which allowed the defendants to charge lower prices on liquor as a result of a "tax evasion discount," was barred under the Revenue Rule).

The fact that the proceedings in Denmark are ongoing makes the application of the Revenue Rule to this case especially appropriate. If this Court were to make legal or factual determinations now or at any subsequent stage in this litigation with respect to the propriety of the tax refund claims, such rulings would cause "policy complications and embarrassment" by intervening and potentially undermining SKAT's own investigation and proceedings in Denmark. *See European Community v. RJR Nabisco*, 424 F.3d 175, 180 (2d Cir. 2005). The Revenue Rule

---

[4] Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, T.I.A.S. No. 13056. Article 26 (Exchange of Information) of the Treaty permits requests for information from the IRS relating to "the assessment or collection of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the [Treaty]." Treaty, Art. 26, ¶ 1.

was developed to prevent precisely such political repercussions that may arise where one foreign sovereign meddles in the revenue laws of another foreign sovereign.

Summarily ignoring the tax-related nature of its claims, SKAT cites *Pfizer, Inc. v. Government of India,* 434 U.S. 308, 318-19, 98 S. Ct. 584, 591 (1978), for the general proposition that a foreign sovereign is entitled to prosecute any civil claim in U.S. courts on the same basis as a domestic corporation or individual. Opp. 8. It also relies on *Republic of Philippines v. Marcos*, 806 F.2d. 344 (2d Cir. 1986), *Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), and *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472 (1st Dep't 1995), to assert the Revenue Rule does not bar cases involving plain theft and embezzlement brought by foreign sovereigns. Opp. 7-8. SKAT's reliance on the *Marcos* cases and *Duvalier* is patently misplaced. None of these cases involved claims of tax fraud: there were no allegations that the former heads of government in these cases perpetrated their thefts or embezzlements of government funds through inappropriate or fraudulent tax filings, or any other form of a tax fraud, nor do they reference the role of any tax authority in recovering stolen property. Defendants do not dispute a foreign sovereign's general ability to prosecute a civil case in U.S. court, but this case is starkly different: SKAT alleges an abuse of the Danish tax system and is asking the U.S. courts to determine in the first instance whether tax fraud occurred under Danish tax law, and if so, to enforce SKAT's unadjudicated tax claims (which are pending in administrative appeals in Denmark) against the Defendants. SKAT's efforts to hide behind alternative nomenclature is simply an attempt to obfuscate the true substance of this case in order to align its facts with the *Marcos* cases and *Duvalier*.

SKAT also asserts that the determination of whether the Defendants owned the shares at issue does not require the Court to enforce Danish tax law. Opp. 9. It cites *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006), and *In re CINAR Corp. Sec. Litig.*, 186 F.

5

Supp. 2d 279 (E.D.N.Y. 2002), as examples of cases where the court dismissed the defendants' Revenue Rule objection finding that no enforcement of foreign tax law by the U.S. court was necessary. Those cases, however, are clearly distinguishable: both were brought *after* the respective tax authorities had already investigated and finalized the underlying tax issues. Thus, the issue of whether tax fraud occurred, or whether the foreign tax authority had properly applied its laws to find tax fraud, were not before the U.S. courts. Rather, the sole issue in each of those cases was whether the defendants had made appropriate disclosures in light of the tax fraud in accordance with specific SEC rules.[5] Here, the ultimate (and open) question is whether the Defendants engaged in tax fraud in Denmark, and more particularly, whether the Plans were the beneficial owners of Danish shares, subject to Danish withholding tax, and thus entitled to the refunds at issue. This inquiry is unresolved and is unquestionably a matter of Danish tax law.

If SKAT is successful in its efforts to evade the restrictions imposed by the Revenue Rule and the Treaty, it will open the floodgates to foreign governments seeking to adjudicate issues of foreign tax and revenue laws in U.S. courts. In such circumstance, Defendants will effectively be litigating the same claim in two jurisdictions, resulting in parallel proceedings duplicating discovery, motion practice, and trial, and risking inconsistent determinations. This is precisely why the appropriate forum to litigate these politically contentious issues is in Denmark, where the tax appeal cases are pending. This case is barred by the Revenue Rule and should be dismissed.

---

[5] In *In re Yukos*, the pertinent inquiry was whether the defendants acted with fraudulent intent in withholding information relating to its activities from the investing public. Thus, the court was not asked to opine on the validity of the Russian tax authority's investigation and subsequent measures or determinations, nor was it asked to enforce the Russian tax decisions. The court found (*inter alia*) that the defendant's revenue claim was without merit because "the validity of [the sovereign acts of the Russian Federation had no] bearing on Defendants' motion to dismiss or on questions likely to affect the merits of this litigation." 2006 WL 3026024, at *8. In *In re CINAR*, the defendants admitted to the abusive tax fraud scheme using the Canadian tax incentive system. There was no factual dispute between the parties about whether the defendants actually abused the Canadian tax system—*i.e.*, the courts were not required to interpret, apply, or enforce Canadian tax law to determine in the first place whether the tax fraud was perpetrated. Rather, the court was asked to adjudicate, whether, in light of CINAR's abusive tax fraud scheme, CINAR made fraudulent disclosures in its financial statements to its shareholders. 186 F. Supp. 2d at 293-94.

## II.     The Opposition Confirms SKAT's Failure to Plead Knowledge and Intent.

SKAT's opposition fails to identify a "strong inference" that Defendants "had knowledge of the [alleged] falsity of [any] statement and an intent to defraud." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 438 (S.D.N.Y. 2017). Instead, SKAT merely "couple[s] a factual statement with a conclusory allegation of fraudulent intent," *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994), concluding that because, in its view, Defendants were allegedly not entitled to the tax refunds claimed, they must have "intentionally, knowingly and/or recklessly made or caused to be made" fraudulent statements. TBLPP Compl. ¶ 52; *see also* ¶ 59.

But "the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind [is not] a license to base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted*)*. SKAT still has not "create[d] even a minimal factual basis for [its] conclusory allegations of scienter." *Elavon, Inc. v. Northeast Advance Tech., Inc.*, 2017 WL 4876300, at *13 (S.D.N.Y. Oct. 27, 2017) (internal quotation omitted); *see also Am. Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *20 (S.D.N.Y. Sept. 30, 2017) (rejecting conclusory knowledge allegation when defendant could "point[] to no allegations that support this conclusory statement"). Instead, everything SKAT has alleged "is entirely consistent with legal conduct," *Elavon, Inc. v. Northeast Advance Tech., Inc.*, 2017 WL 4876300, at *13—namely a number of independent entities participating in a common method of tax arbitrage. Unlike in *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504 (S.D.N.Y. 2016), SKAT has not alleged that Defendants fraudulently altered any documents. SKAT also concedes it has not alleged any conspiracy between the parties. Opp. 19. And while SKAT alleges that the "credit advices" (or "tax vouchers") issued by the Broker Custodian, a FSA-regulated U.K. financial institution, contained "false" information, it does not suggest that the Broker Custodian *knowingly* provided

7

false information—*or any reason to believe that Defendants knew it was false*. Mot. 21.[6]

Instead, SKAT argues that fraudulent intent can be inferred from the mere fact that the value of the shares these Plans claimed to own exceeded their assets. Opp. 16-17. But margin-financed securities trading and leverage has long been a common practice among U.S. pension plans or other tax-exempt entities, as a cursory review of case law and I.R.S. authority reveals. *See, e.g.,* I.R.C. § 514; *Henry E. & Nancy Horton Bartels Trust v. United States*, 209 F.3d 147 (2d Cir. 2000); *Elliott Knitwear Profit Sharing Plan v. Comm'r*, 614 F.2d 347 (3d Cir. 1980); *Ocean Cove Corp. Ret. Plan and Trust v. United States*, 657 F. Supp. 776 (S.D. Fla. 1987); I.R.S. Pub. 598 (01/2017). And while SKAT cites the "large sums of money in question" as an "obvious motive," Opp. 16, mere "allegations that defendants stand to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)." *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 WL 1008138, at *10 (S.D.N.Y. Apr. 18, 2006) (internal quotation omitted); *accord Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016).

To obscure its inability to plead the "strong inference" of fraud as to each of the Defendants, SKAT attempts to lump together all of its allegations from 140 separate complaints into a single, overarching scheme carried out over three years. Opp. 19-20 (pointing out "the magnitude of the Plan Defendants' claimed shares ownership" as probative of fraud). But without any allegations linking its disparate allegations into a single scheme or conspiracy, the Complaints point instead to the common sense conclusion that the Plan Defendants were merely separately engaging in a common dividend arbitrage strategy, not a scheme to defraud anyone.

---

[6] While SKAT argues it "cannot be expected to know" how Defendants perpetrated their fraud at the pleading stage, Opp. 18, it offers no plausible explanation. Given its claims of a three-year investigation with three other jurisdictions before bringing this case, TBLPP Compl. ¶¶ 6, 8, there is no justification for this pleading insufficiency.

### III. The Complaint Does Not Adequately Allege Substantial Assistance or Materially False Representations by Authorized Representatives or Incorporators.

The only allegations against the Authorized Representatives are that they signed powers of attorney not alleged to be false or fraudulent, and the only allegations against the Incorporators are that they incorporated entities associated with the Plan Defendants. Mot. 23-25. Neither of these actions is a false statement; nor do they constitute "substantial assistance" to any alleged fraud.

SKAT primarily contends that what matters is whether the alleged aiding and abetting substantially contributed to the fraud. Opp. 21. Yet SKAT does not point to any "substantial contribution"—only a type of "but-for" causation, Opp. 21, which is insufficient. *See* Mot. 23; *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007) (citations omitted) ("Plaintiffs [alleging substantial assistance] must allege more than but-for causation"); *see also Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 96 (2d Cir. 2012) (execution of securities transaction at fraudster's direction insufficient for substantial assistance). Notably, SKAT fails to cite any case holding the alleged conduct by these Defendants (*e.g.*, signing a power of attorney) constitutes "substantial assistance."

SKAT therefore essentially admits it cannot plead misconduct by the Authorized Representatives or Incorporators, so it instead (1) advances a novel group agency theory contradicted by this Court's *Parmalat* ruling, which SKAT tries vainly to distinguish, and (2) suggests that it need not "attribute specific wrongful acts between [Defendants] at the pleading stage." Opp. 22. Not so: SKAT must not only plead specific "wrongful acts" (*i.e.*, misrepresentation) by each defendant, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (plaintiff must "link[] the alleged fraudulent statements to particular" defendants), it must also plead that each defendant *knew* they were wrong, *e.g., Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054, at *5 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.) (scienter allegations

9

insufficient as to promoters of an allegedly fraudulent contest because no allegations that promoters knew of the alleged fraud). And SKAT's cases are clearly distinguishable, involving an individual defendant and a closely held corporation that were both alleged to be liable for the *same conduct*. *See Minnie Rose*, 169 F. Supp. 3d at 518; *Buyers and Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, 575 F. Supp. 2d 499, 508 n.3 (S.D.N.Y. 2008) (involving a RICO—not common law fraud—claim). Here, the Complaints identify *distinct* conduct by the Authorized Representatives and Incorporators that is indisputably not wrongful. Mot. 24-25.

**IV.     Unjust Enrichment, Money Had and Received, and Payment By Mistake Claims Are Duplicative.**

While SKAT is correct that unjust enrichment, money had and received, and payment by mistake claims are sometimes pleaded together in New York, the cases SKAT cites do not consider whether such pleading is duplicative. Instead, the cases actually *support* the argument that these claims are essentially identical. *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 2010 WL 4038826, at *4 (E.D.N.Y. Oct. 14, 2010) ("The first three of Chase's crossclaims—for money had and received, payment by mistake, and unjust enrichment—have been presented as separate causes of action, but all three are claims for restitution premised on the principle that recovery is to be had *ex aequo et bono* . . . [and] turn on a single inquiry."); *In re Estate of Witbeck*, 666 N.Y.S.2d 315, 316-17 (3rd Dep't 1997) (stating an action for money had and received is a form of an unjust enrichment claim); *accord Hamlin Beach Camping, Catering, & Concessions Corp. v. State*, 756 N.Y.S.2d 354, 358 (3d Dep't 2003). New York courts do dismiss duplicative claims when squarely presented with the issue. *See, e.g., Dormitory Auth. of the State of New York v. Samson Constr. Co.*, 30 N.Y.3d 704, 712-13 (2018); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790-91 (2012); *Richbell Info. Servs., Inc. v. Jupiter Part., L.P.*, 765 N.Y.S.2d 575, 590 (1st Dep't 2003). The Court should do likewise here.

10

**CONCLUSION**

For the foregoing reasons, the Complaints should be dismissed against all Defendants.

Dated: New York, New York         CAPLIN & DRYSDALE, CHARTERED
October 30, 2018

           By: s/ Mark D. Allison_____
              Mark D. Allison
              Zhanna A. Ziering
              600 Lexington Avenue
              21th Floor
              New York, New York 10022
              Tel: (212) 379-6000
              mallison@capdale.com
              zziering@capdale.com

*Attorneys for Defendants:*
*The Bradley London Pension Plan and Doston Bradley*
*Ackview Solo 401K Plan and Sean Driscoll*
*NYCATX LLC Solo 401K Plan and Carl Andrew Vergari*
*Sanford Villa Pension Plan and Roger Lehman*
*The Aria Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Aston Advisors LLC 401K Plan and Roger Lehman*
*The Atlantic DHR 401K Plan and Doston Bradley*
*The Belforte Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Bravos Advisors 401K Plan, Roger Lehman, and Gavin Crescenzo*
*The Busby Black 401K Plan and Doston Bradley*
*The Canada Rock LLC 401K Plan and Doston Bradley*
*The Costello Advisors Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The DMR Pension Plan and Doston Bradley*
*The Dosmon Bly Pension Plan and Doston Bradley*
*The Eskin Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Fieldcrest Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Houston Rocco LLC 401K Plan and Doston Bradley*

*The India Bombay LLC 401K Plan and Doston Bradley*
*The ISDB Pension Plan and Doston Bradley*
*The KASV Group Pension Plan, Roger Lehman, and Svetlin Petkov*
*The Kodiak Capital Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Krabi Holdings LLC 401K Plan and Gavin Crescenzo*
*The Kyber Pension Plan, Roger Lehman and Gavin Crescenzo*
*The LBR Capital Pension Plan and Doston Bradley*
*The Lerici Capital Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Ludlow Holdings 401K Plan, Roger Lehman, and Gavin Crescenzo*
*The M2F Wellness LLC 401K Plan and Mitchell Protass*
*The Monin Amper Pension Plan and Doston Bradley*
*The MPQ Holdings LLC 401K Plan and Mitchell Protass*
*The NYC Stanismore Pension Plan and Doston Bradley*
*The Petkov Management LLC 401K Plan and Svetlin Petkov*
*The Petkov Partners Pension Plan, Roger Lehman, and Svetlin Petkov*
*The Proper Pacific LLC 401K Plan and Doston Bradley*
*The Regoleth Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Saba Capital LLC 401K Plan, Roger Lehman, and Gavin Crescenzo*
*The Sector 230 LLC 401K Plan*
*The SPKK LLC 401K Plan, Roger Lehman, and Svetlin Petkov*
*The Stark Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Stor Capital Consulting LLC 401K Plan and Michael Ben-Jacob*
*The SVP 401K Plan, Roger Lehman, and Svetlin Petkov*
*The Texas Rocco LLC 401K Plan and Doston Bradley*
*The TKKJ LLC 401K Plan and Thomas Kertelits*

*The West River Pension Plan, Roger Lehman, and Gavin Crescenzo*
*The Westport Advisors LLC 401K Plan, Roger Lehman, and Gavin Crescenzo*

s/ Stephen D. Andrews (e-*signed with consent*)

Stephen D. Andrews
Amy B. McKinlay
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Amckinlay@wc.com
sandrews@wc.com
*Attorneys for Sander Gerber Pension Plan*

s/  Bryan C. Skarlatos  (*e-signed with consent*)

Bryan C. Skarlatos
Juliet L. Fink
Kostelanetz & Fink LLP
Seven World Trade Center, 34th Floor
New York, New York 10007
Tel: (212) 808-8100
bskarlatos@kflaw.com
jfink@kflaw.com
*Attorneys for Defendants Sterling Alpha LLC 401(K) Profit Sharing Plan, John C. Doscas, Sander Gerber Pension Plan, Del Mar Asset Management Saving & Retirement Plan, Federated Logistics LLC 401K Plan, David W. Freelove*

s/  Edward M. Spiro    (*e-signed with consent*)

Edward M. Spiro
Audrey Feldman
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, New York 10017
Tel: 212. 880-9460
espiro@maglaw.com
audreyfeldman@maglaw.com
*Attorneys for Adam LaRosa*

13

        s/ Martin H. Kaplan  *(e-signed with consent)*

        Martin H. Kaplan
        Joseph Christopher Albanese
        Gusrae, Kaplan, Nusbaum, PLLC
        120 Wall Street
        New York, NY 10005
        Tel: (212) 369-1400
        mkaplan@gusraekaplan.com
        calbanese@gusraekaplan.com
        *Attorneys for Goldstein Law Group PC 401(k)*
        *Profit Sharing Plan & Sheldon Goldstein*

        s/ David L. Goldberg *(e-signed with consent)*

        David L. Goldberg
        Katten Muchin Resenman LLP
        575 Madison Avenue
        New York, New York 10022-2585
        (212) 940-6787
        david.goldberg@kattenlaw.com
        *Attorney for Robert Klugman*

        s/ Thomas E.L. Dewey *(e-signed with consent)*

        Thomas E.L. Dewey
        David S. Pegno
        Dewey Pegno & Kramarsky
        777 Third Avenue, 37th Floor
        New York, NY 10017
        Tel: 212. 943-900
        tdewey@dpklaw.com
        dpegno@dpklaw.com
        *Attorneys for Michael Ben-Jacob*

# CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2018, true and correct copies of Consolidated Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Consolidated Defendants' Motion to Dismiss the Complaints and Supplemental Declaration of Mark D. Allison and its Exhibits were served by CM/ECF or as indicated below on the following:

Sarah L. Cave
Marc A. Weinstein
William R. Maguire
John T. McGoey
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
sarah.cave@hugheshubbard.com
marc.weinstein@hugheshubbard.com
bill.maquire@hugheshubbard.com
john.mcgoey@hugheshubbard.com
*Attorneys for Plaintiff SKAT*

Bryan C. Skarlatos
Juliet L. Fink
Kostelanetz & Fink LLP
Seven World Trade Center, 34th Floor
New York, New York 10007
Tel: (212) 808-8100
bskarlatos@kflaw.com
jfink@kflaw.com
*Attorneys for Defendants Sterling Alpha LLC 401(K) Profit Sharing Plan, John C. Doscas, Sander Gerber Pension Plan, Del Mar Asset Management Saving & Retirement Plan, Federated Logistics LLC 401K Plan, David W. Freelove*

Amy B. McKinlay
Stephen D. Andrews
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Amckinlay@wc.com
sandrews@wc.com
*Attorneys for Sander Gerber Pension Plan*

Edward M. Spiro
Audrey Sarah Minnie Feldman
Morvillo, Abramowitz, Grand, Iason, & Annello P.C.
565 Fifth Avenue
New York, New York 10017
Tel: 212. 880-9460
espiro@magislaw.com
audreyfeldman@maglaw.com
*Attorneys for Adam LaRosa*

Joseph Christopher Albanese
Martin H. Kaplan
Gusrae, Kaplan, Nusbaum, PLLC
120 Wall Street
New York, NY 10005
Tel: (212) 369-1400
calbanese@gusraekaplan.com
mkaplan@gusraekaplan.com
*Attorneys for Goldstein Law Group PC 401(k) Profit Sharing Plan & Sheldon Goldstein*

Thomas E.L. Dewey
David S. Pegno
Dewey Pegno & Kramarsky
777 Third Avenue, 37th Floor
New York, NY 10017
Tel: 212. 943-900
tdewey@dpklaw.com
dpegno@dpklaw.com
*Attorneys for Michael Ben-Jacob*

David L. Goldberg
Katten Muchin Resenman LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-6787
david.goldberg@kattenlaw.com
*Attorney for Robert Klugman*

By First Class Mail

Raubritter LLC Pension Plan
160 Central Park South, 1726
New York, New York 10019

The Random Holdings 401K Plan
200 Henry Street, Apt. 1501

16

Stamford, CT 06902

Edgepoint Capital LLC Roth 401K Plan
Aerovane Logistics LLC Roth 401K Plan
Headsail Manufacturing LLC Roth 401K Plan
c/o Arnold & Porter Kaye Scholer LLP
250 West 55th Street New York, NY 10019-9710

                                        s/ Mark D. Allison

                                        Mark D. Allison
                                        CAPLIN & DRYSDALE, CHARTERED
                                        600 Lexington Ave., 21st Floor
                                        New York, NY 10022
                                        (212) 379-6000
                                        mallison@capdale.com