I6q1skac

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

In re SKAT Tax Refund Scheme                18 Civ. 4047 (LAK)
Litigation                                  (And related cases)

                                            Conference

------------------------------x

                                            New York, N.Y.
                                            June 26, 2018
                                            11:05 a.m.

Before:

                    HON. LEWIS A. KAPLAN,

                                            District Judge

                         APPEARANCES

HUGHES HUBBARD & REED LLP
        Attorneys for Plaintiff
BY:   MARC A. WEINSTEIN, ESQ.
      WILLIAM R. MAGUIRE, ESQ.
      SARAH L. CAVE, ESQ.

CAPLIN & DRYSDALE, CHARTERED
        Attorneys for Defendants
BY:   MARK D. ALLISON, ESQ.
      ZHANNA A. ZIERING, ESQ.

KOSTELANETZ & FINK, LLP
        Attorneys for Defendants
(Sterling Alpha, John Doscas, Delmar Asset, David Freelove,
 18 Civ. 4894 & 18 Civ. 4899)
BY:   JULIET L. FINK, ESQ.
      ERIC SMITH, ESQ.

WILLIAMS & CONNOLLY LLP
        Attorneys for Defendant Sander Gerber Pension 18 Civ. 4899
BY:   AMY B. McKINLAY, ESQ.
      STEPHEN D. ANDREWS, ESQ.

GUSRAE KAPLAN NUSBAUM PLLC
        Attorneys for Defendants Goldstein
BY:   MARTIN H. KAPLAN, ESQ.
      J. CHRISTOPHER ALBANESE, ESQ.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
        Attorneys for Defendant Adam LaRosa 18 Civ. 4833
BY:   EDWARD M. SPIRO, ESQ.

I6q1skac

```
 1                  (Case called)

 2                  THE COURT:  Good morning, everybody.

 3                  ALL COUNSEL:  Good morning.

 4                  THE COURT:  Who's going to speak on behalf of the

 5      plaintiffs?

 6                  MR. WEINSTEIN:  Marc Weinstein from Hughes Hubbard &

 7      Reed, your Honor.  Good morning.

 8                  THE COURT:  Good morning.

 9                  And for the defendants?

10                  MR. ALLISON:  Good morning, your Honor.  Mark Allison

11      for a group of about 45 or so defendants, but I've been asked

12      to speak for everybody this morning.

13                  THE COURT:  Okay.  Fine.

14                  All right, then.  I've read a few of these complaints,

15      but I think it would be helpful to get some basic information

16      so I have some idea where we ought to be going.

17                  First of all, how many of these cases are there,

18      Mr. Weinstein?

19                  MR. WEINSTEIN:  Your Honor, there are 49 filed and

20      assigned to your Honor in the Southern District; in total in

21      federal court, there are 140.  There are ten other districts

22      where there are cases filed.  Your Honor has the most of those.

23      And there are a few state court cases.

24                  THE COURT:  How many other?  Oh, you said ten other

25      districts?
```

I6q1skac

1          MR. WEINSTEIN:  Ten other districts, yes.

2          THE COURT:  Of the ten other districts, which one has

3     the largest number of cases and how many?

4          MR. WEINSTEIN:  The District of New Jersey, there's 36

5     filed cases.

6          THE COURT:  And who are they before, or are they

7     spread out?

8          MR. WEINSTEIN:  No, I think, your Honor, they were

9     assigned to one judge, I believe in Trenton.  And I just at the

10    moment don't have the name of the judge in front of me.

11         THE COURT:  Are plaintiffs the same in all these

12    cases?

13         MR. WEINSTEIN:  Yes, your Honor.

14         THE COURT:  And why are they spread all over the

15    country?

16         MR. WEINSTEIN:  For jurisdictional reasons, your

17    Honor.  As far as personal jurisdiction, we want to ensure that

18    we're filing in a district in which we did not believe any

19    defendant would have a personal jurisdiction argument.

20         THE COURT:  Is there an MDL motion pending?

21         MR. WEINSTEIN:  There is not one pending, your Honor,

22    but it is certainly under consideration.

23         THE COURT:  Are defendants likely to move or who's

24    going to move?

25         MR. ALLISON:  Your Honor, we do expect to move for

I6q1skac

| | |
|---|---|
| 1 | dismissal on all these cases. |
| 2 | THE COURT:  I'm talking about multidistrict. |
| 3 | MR. ALLISON:  Oh, I'm sorry.  It is something that we |
| 4 | are talking about internally, your Honor, but I think that we |
| 5 | are wanting to see where this goes in terms of an initial |
| 6 | motion to dismiss before we evaluate whether to do that. |
| 7 | THE COURT:  Before you? |
| 8 | MR. ALLISON:  Before we evaluate where we're going to |
| 9 | go from there.  Obviously if the case -- |
| 10 | THE COURT:  So you're going to have motions to dismiss |
| 11 | in 11 districts? |
| 12 | MR. ALLISON:  We prefer to obviously have one |
| 13 | consolidated motion to dismiss, but at this juncture, because |
| 14 | we've got different schedules in different districts, some are |
| 15 | more pregnant than others. |
| 16 | THE COURT:  Some are? |
| 17 | MR. ALLISON:  I'm not sure the timing will work to do |
| 18 | that. |
| 19 | THE COURT:  What do you mean some are more pregnant |
| 20 | than others?  I thought that was a binary problem. |
| 21 | MR. ALLISON:  Well, I guess that's yet to be decided, |
| 22 | your Honor.  We have some cases with response dates that have |
| 23 | already been set. |
| 24 | THE COURT:  Response dates; that is to say, responses |
| 25 | to the complaint, answers to the complaint? |

I6q1skac

1        MR. ALLISON:  Yes, correct, your Honor.  So we're

2    already set with some dates in some districts; others, like

3    this one, we don't have a date certain yet, so I'm not sure how

4    we would coordinate that, but obviously it's in our interests

5    to try to develop an efficient mechanism to dispose of all the

6    cases for sure.

7        THE COURT:  Are there any defendants who would have a

8    problem consenting to 1404 transfers and waiving whatever

9    personal jurisdiction or venue issues might exist?

10       MR. ALLISON:  It's not a question we've asked, your

11   Honor.  I'm not aware that there would be any specific problem,

12   but we have not asked that question.

13       THE COURT:  Well, I suggest you do.

14       MR. ALLISON:  Sure.

15       THE COURT:  It strikes me as making very little sense

16   to have two or six or eleven districts dealing with motions to

17   dismiss on what I haven't asked yet but assume are likely to be

18   common grounds.

19       MR. ALLISON:  Agreed, your Honor.  Agreed.

20       THE COURT:  And is my assumption right that the

21   grounds would likely be common?

22       MR. ALLISON:  As far as we can tell, they would be the

23   same in every district, yes.

24       THE COURT:  Okay.  So let's jump ahead.  Tell me what

25   that might be.

I6q1skac

1          MR. ALLISON:  Well, I think, first of all, your Honor,

2     as you can tell from the complaints, SKAT is a Danish taxing

3     authority that is seeking collection of amounts that it alleges

4     are unpaid in Denmark.  This obviously invokes the revenue

5     rule, which I'm sure your Honor is familiar with.

6          THE COURT:  I've heard of it.

7          MR. ALLISON:  I'm sure you have.  And we're aware of

8     that.  So obviously that's going to be a principal issue.

9          In addition, your Honor, without being specific, a

10    number of the cases or possibly all of them are in the middle

11    of administrative proceedings back in Denmark, at various

12    levels, where there has either not been a final determination

13    or there are ongoing appeal rights that are being currently

14    exercised or will be timely exercised in Denmark.  So obviously

15    there's an element of this being premature, in our view.

16         And then of course there are issues about whether

17    there's been a proper -- or a failure to state a claim here

18    properly.  Particularly given that this is a fraud case, we're

19    concerned about the lack of particularities in the complaints.

20         THE COURT:  Well, tell me what the concern about that

21    is.

22         MR. ALLISON:  Specifically, in these complaints, your

23    Honor?

24         THE COURT:  I read at least a number of the

25    complaints, and I thought that the fraud claim -- and no doubt

 1    you'll correct me, but I thought the fraud claim was that a

 2    representation was made by or on behalf of every single

 3    defendant to the effect that the person who ultimately received

 4    the payment had paid, had obtained a refund premised on their

 5    ownership of stock in Danish companies, when in truth and in

 6    fact they didn't own the stock that they claimed, right?

 7              MR. ALLISON:  That is the generalized explanation that

 8    you do see in every complaint.

 9              THE COURT:  What's the lack of particularity about

10    that?

11              MR. ALLISON:  The lack of particularity is as it

12    relates to each individual defendant and what their particular

13    conduct was, what their particular knowledge was, and how or

14    whether they knew of this allegation, assuming it's even true.

15              THE COURT:  Okay.  I understand that.  Not so much

16    perhaps what the substance of the allegedly fraudulent

17    representation was, but scienter, basically, right?

18              MR. ALLISON:  Correct, your Honor.

19              THE COURT:  Okay.  All right.  Let's see.  Thank you,

20    Mr. Allison.

21              MR. ALLISON:  Thank you.

22              THE COURT:  Mr. Weinstein, what do you have to say?

23              MR. WEINSTEIN:  That's an open-ended question.

24              First, just on the status of the various proceedings,

25    your Honor, this is the first conference before any of the

I6q1skac

1    district court judges, so there actually haven't been schedules

2    set in any case.  There was an agreement in one of the

3    districts, on consent, to set a response date of July 27th.

4    But there have been no --

5              THE COURT:  This is for answers or motions.

6              MR. WEINSTEIN:  Or motions, yes.  But there have been

7    no other scheduling orders issued by any of the other courts.

8              With respect to motions, they have motions to make,

9    obviously we'll respond to those, but we feel the cases should

10   proceed and not just --

11             THE COURT:  And the your revenue rule argument is it's

12   not a tax collection case, it's essentially a commercial fraud

13   case, in which the plaintiff happens to be a government agency.

14             MR. WEINSTEIN:  Correct.

15             THE COURT:  Okay.  So I have the picture.

16             MR. WEINSTEIN:  Yes, your Honor.

17             I should add, your Honor, just as far as status goes,

18   if we're up to this, we have actually had a chance to discuss

19   with I think almost all of the defense attorneys here -- one

20   has appeared this morning, so I'm not sure he's had a chance to

21   look.  But we have an agreed-upon case management order, based

22   on your Honor's order, that we can propose to the Court.  All

23   parties have agreed to it other than perhaps one who might not

24   have had a chance, but --

25             THE COURT:  Do you have it to hand up?

I6q1skac

1          MR. WEINSTEIN:  I can hand up a copy, your Honor, yes.

2          THE COURT:  Thank you.

3          MR. WEINSTEIN:  And in addition to that, your Honor,

4     because it's not on that order, I think we've all agreed that

5     the response date here of an answer or motion would be

6     August 15th.

7          MR. ALLISON:  Yes, that's correct.  And your Honor, I

8     think that would be an omnibus submission amongst all the

9     defendants.

10         THE COURT:  I'm sorry.  A response date to a motion or

11    the date by which the motion is to be filed?

12         MR. WEINSTEIN:  To be filed, either answer or motion.

13         THE COURT:  Well, I take it you're going to move

14    against the complaint, right?

15         MR. ALLISON:  Well, just based on what I explained,

16    your Honor, yes, I would expect to.

17         THE COURT:  Yes, right.

18         Now this form of order that you handed up lists 10

19    cases, right, out of the 49 assigned to me.  Why?

20         MR. WEINSTEIN:  It's one of the orders that issued

21    from the Court, because this was going to be just a proposal

22    for your Honor to -- which we've handed it up on this form, but

23    it would apply across all 49, and we would fill those out

24    accordingly if your Honor approves the schedule.

25         THE COURT:  Okay.  Now since both sides are

I6q1skac

1    contemplating the possibility of MDL motions, we'll start with

2    you, Mr. Weinstein.  What's common and what's different about

3    these cases?

4             MR. WEINSTEIN:  There is quite a lot of commonality,

5    actually, your Honor.  There is not a lot of difference.

6    Obviously there may be some nuances on the edges of the facts,

7    but essentially in all the cases they filed the same forms,

8    they all had the same, you know, things that went in with the

9    form, the same power of attorneys, the same proof of ownership,

10   or purported proof of ownership, and they all got refunds back

11   in return.  So there is certainly commonality in the facts.

12            THE COURT:  So because I want to understand, when you

13   say they filed the same forms, is it correct for me to infer

14   that each and every one of them claimed to own stock in the

15   Danish company in question?  The particular company varied, but

16   they each made the same claim with respect to the stock, and

17   it's your position that that was a false representation or an

18   inaccurate representation, putting to one side the question for

19   the moment whether it was fraudulent?

20            MR. WEINSTEIN:  That's right.

21            THE COURT:  Okay.  Now is there likely, Mr. Allison,

22   to be any dispute about the fact that although the

23   representation in each case was about a different company or

24   companies, or at least a multitude of companies, that the

25   representation was made because it was there on the form and

I6q1skac

1   somebody signed it, right?

2           MR. ALLISON:  Well, I can't say for certainty, your

3   Honor, that that's true in every case because we haven't done

4   our own diligence to evaluate that.  I don't dispute the sort

5   of common pattern that plaintiff is suggesting.  That may or

6   may not be the case.  But what I don't know is the nature of

7   the representations that may have been made, whether that was

8   the same representation made in every case.  Again, there are

9   knowledge issues, scienter issues.

10          THE COURT:  That's a different question.  I'm just

11  focused on the assertion that they owned stock in the Danish

12  company.

13          MR. ALLISON:  We don't know that across the board,

14  your Honor, at this point.

15          THE COURT:  Okay.  Do you have any information to the

16  effect that it was any different?  What I'm hearing from

17  Mr. Weinstein essentially is that there was a standard practice

18  and there was a form that had to be filled out and the form had

19  to say X.  Just like if you pay withholding tax on an employee,

20  it says, I have the following employees and here's what I paid

21  them this month, and here's the tax I owed.  And if somebody

22  leaves an employee off, well, the statement at the end that

23  this is the fact is wrong.  It may be for a different employee.

24  But you followed a pattern.

25          MR. ALLISON:  I have no reason to doubt the

I6q1skac

1    representation that that is the common thread amongst all these

2    cases, but I don't know that for sure.

3            THE COURT:  So we're going to have some individual

4    issues with respect to knowledge and scienter in respect of the

5    fraud claim; there are also other theories, I understand, in

6    which that may not be an essential element, right?

7            MR. ALLISON:  Correct.

8            THE COURT:  Okay.  Mr. Weinstein, is there any claim

9    that there was a common scheme to do this that links these

10   cases?

11           MR. WEINSTEIN:  Yes, in various ways.  For example,

12   before your Honor alone, I believe in 21 of the cases, Roger

13   Lehman is a named defendant because he was the authorized

14   representative signing some of the forms on behalf of 21

15   different plans, so certainly as to him, there's commonality.

16   I think there are other links.  And then it is quite possible,

17   but I think discovery will show that there are higher-level

18   links of people who may not have been sued yet.

19           THE COURT:  Higher level meaning what?

20           MR. WEINSTEIN:  There have certainly been reports in

21   the press that there's an individual named Sanjay Shah who sort

22   of masterminded this whole thing.  Whether he is actually

23   linked to all of the, at the moment, 140 plans that have been

24   sued in federal court, we don't know and discovery will show,

25   but --

I6q1skac

1          THE COURT:  Has he been sued?

2          MR. WEINSTEIN:  Not in the US.

3          THE COURT:  Where is he?

4          MR. WEINSTEIN:  Where is?

5          THE COURT:  Where is he?

6          MR. WEINSTEIN:  There are reports that he's in I

7  believe Dubai, and that I think he was a British citizen but

8  has since made his way to Dubai.

9          THE COURT:  Do your complaints allege that these

10  refund claims, all or mostly or to some degree, ultimately are

11  traceable back to some bright idea that Mr. Shah or somebody

12  else or some small group had?

13          MR. WEINSTEIN:  They don't.  There are certainly

14  things we don't know that only discovery will show as to links

15  to Mr. Shah.  I think what the complaints do allege, your

16  Honor, is that each of these essentially mirror each other in

17  how they were effectuated, but as to whether they are, one or

18  more, linked to Mr. Shah, we don't make those allegations in

19  the complaint.

20          THE COURT:  Putting aside whether you allege that it

21  was Mr. Shah, is it your suggestion that circumstantially it

22  appears that there was a common source of this idea?

23          MR. WEINSTEIN:  It certainly does appear that way, and

24  so I think it's an educated guess that for at least many of

25  these, there is a common link; maybe not all, but for many.

I6q1skac

1        THE COURT:  So is discovery likely to pursue the

2   question of the source of the idea or are you just fighting the

3   refund issues?

4        MR. WEINSTEIN:  No, I think discovery is meant to

5   address both, one of fighting the refunds with the named

6   defendants but also determining if there are unnamed parties

7   out there who should be sued.

8        May I also just add, your Honor, because you had asked

9   me earlier about commonalities or differences.

10        THE COURT:  Right.

11        MR. WEINSTEIN:  I think we've been addressing the

12   factual issues.  As far as potential differences, just on the

13   legal issues, is the fact that the claims here are state law

14   claims, so while they are all similar in the various districts,

15   there may be, based on choice of law, different state laws

16   applying I think to claims brought in the different courts.

17        THE COURT:  There might be an argument that Danish law

18   applies, mightn't there?

19        MR. WEINSTEIN:  There might be, but I just want to

20   bring to your Honor's attention --

21        THE COURT:  No, no.  I appreciate that you did that.

22        So potential differences involve scienter on the part

23   of individual defendants, as to the fraud count, not

24   necessarily on other counts; potential choice of law problems

25   that may result in different law.  Anything else?

I6q1skac

1          MR. WEINSTEIN:  I think those are the main ones, your

2     Honor.

3          THE COURT:  What about you, Mr. Allison?  Anything

4     else that I've missed?

5          MR. ALLISON:  In terms of differences, your Honor?

6          THE COURT:  Yes.

7          MR. ALLISON:  Again, until we have the opportunity to

8     get into the facts of each defense situation, I think we're

9     unable to identify that at this point.

10          THE COURT:  Okay.  Now is there any reason why at

11     least all of the cases before me should not be consolidated for

12     pretrial purposes?

13          MR. WEINSTEIN:  Not from our perspective, your Honor.

14          MR. ALLISON:  I think we're comfortable with that,

15     your Honor, at least at this point, and pending the outcome of

16     a motion to dismiss.

17          THE COURT:  Pending the outcome of?

18          MR. ALLISON:  The motion to dismiss.

19          THE COURT:  Okay.  How many defense counsel, all

20     told -- different firms, I don't mean different human beings --

21     represent defendants in the 49 cases before me?

22          MR. WEINSTEIN:  I believe it's four.  And there is

23     only one defendant in any of those cases who has not had an

24     appearance made by defense counsel.  And I can tell your Honor

25     which case that is.  It's the case against the Raubritter, LLC

I6q1skac

1  pension plan.

2          THE COURT:  Hit me again with that, please.

3          MR. WEINSTEIN:  Yeah.  It's the Raubritter, LLC

4  pension plan, R-A-U-B-R-I-T-T-E-R.  The civil number is 04833.

5          THE COURT:  Can't be 04.

6          MR. WEINSTEIN:  I'm sorry.  I mean, it's 18, but after

7  the CV is --

8          THE COURT:  Okay.  After the CV, 04?

9          MR. WEINSTEIN:  04833.  The individual defendant in

10  that case, Adam LaRosa, has been served.  He has counsel

11  representing him here today, Mr. Spiro, but my understanding is

12  that he's not appearing for the plan.  And so that's the only

13  defendant that has no counsel appearing and that we have not

14  been able to serve yet, and I believe Mr. Spiro is not

15  authorized to accept service.  So that's the only outlier for

16  the 49 cases.

17          THE COURT:  Not authorized to accept service on behalf

18  of the plan, is that right?

19          MR. WEINSTEIN:  That's what I understand.

20          THE COURT:  Okay.  How many different federal judges

21  have at least one of these cases before them?

22          MR. WEINSTEIN:  Eleven.

23          THE COURT:  Well, it's eleven districts.  Are there

24  multiple cases all assigned to a single judge in each district?

25          MR. WEINSTEIN:  I believe so, your Honor.  Excuse me.

I6q1skac

1   I believe so, your Honor.

2              THE COURT:  Okay.

3              MR. WEINSTEIN:  If your Honor would like, obviously I

4   can't do it now, but we can submit to the Court a list of all

5   the cases that are pending in the federal courts.

6              THE COURT:  Yes, that would certainly be helpful.

7              MR. WEINSTEIN:  And the assigned judges and the

8   districts.

9              THE COURT:  That's great.

10             Now what I'm inclined to do is to consolidate all 49

11  of the cases before me for pretrial purposes, to set a motion

12  schedule for the motion to dismiss so we can get that on and

13  decided as soon as we can, reasonably.  I'll take a look at the

14  discovery schedule and the case schedule you've proposed, but

15  nothing crazy jumped out at me when I just ran my eye over it.

16  And get that on file this week.

17             And I simply express my view that it probably doesn't

18  make a whole lot of sense to brief and argue what sounds to me

19  like essentially the same motion to dismiss in two or four or

20  eight different districts with ten or eleven different

21  districts.  I suppose you could do that if you want, but I

22  don't know what the point of it is, frankly.  Very expensive

23  for sure, and potentially chaotic, because if there are

24  dismissals in some districts and denials in other districts,

25  you could find yourself in I'm not sure how many different

I6q1skac

1    circuits at the same time, and it's a recipe for big legal

2    bills and uncertainty.  I know that doesn't break the hearts of

3    all the lawyers in the audience.  I haven't forgotten those

4    days myself.

5            Okay.  Anything else anybody wants to say or tell me

6    or do to educate me?

7            MR. WEINSTEIN:  Your Honor, I'm not sure I can do any

8    more education, but as far as the schedule goes, in order to

9    meet at least the schedule we proposed, it's our understanding

10   that discovery should proceed as it would in a normal case, and

11   I understand they're going to make motions but that there's no

12   reason to hold off on discovery here.

13           THE COURT:  Mr. Allison?

14           MR. ALLISON:  Mr. Weinstein has accurately predicted

15   our concern here.  We would like to stay discovery.

16   Particularly given the fact that this is, in our view, a

17   revenue-rule-based issue on a motion to dismiss, seems we're

18   jumping the gun to engage in discovery.

19           In particular, I just want to note, your Honor, that

20   because of the ongoing administrative proceedings going on in

21   Denmark, we equally have a concern about discovery at this

22   point being used to develop cases in Denmark, so we would very

23   much prefer, as well as from a resource perspective, to hold

24   back discovery at this point.

25           THE COURT:  Well, the first part of your argument, I

1   understand, and I suppose it would not hurt -- although I'll

2   hear from Mr. Weinstein about it -- to hold off till say the

3   third week in August on discovery and then let me see the

4   motion and see what I think about it, and I could reconsider

5   the question of whether to let discovery go ahead once I read

6   it.

7           This subject, I'm sure you all know, because of the

8   *RJR* case is not new to me, and it's an interesting twist on the

9   *RJR* case, and I'm not sure which way it comes out, but I'll

10  have a better idea when I read the defendants' papers.  And any

11  reason why we shouldn't hold off for whatever it is, six weeks

12  or so?  And I wouldn't stop you from serving requests, and if

13  there are any reasons that something had to be preserved in the

14  interim, like a witness was sick or something, we could always

15  make exceptions like that, but then let me look at the motion

16  and we can make another call on it at that point.

17          MR. WEINSTEIN:  Yes and no.  If we're talking -- we

18  are not intending to, you know, take depositions by mid August

19  so that if that's the issue, of course, that's not a problem,

20  and we do need some time to serve discovery requests.  What I

21  wouldn't want to happen is them to just delay starting to

22  prepare responses or what have you or get documents together

23  because they're assuming there's a stay.  Because --

24          THE COURT:  Well, but you made a very good point, and

25  I'm sorry to interrupt.  But are there any outstanding document

I6q1skac

1    requests or interrogatories yet?

2              MR. WEINSTEIN:  There are not, your Honor.

3              THE COURT:  So it's going to take you at least two

4    weeks to put them together, right?  So we're after the Fourth

5    of July before they go out.  And responses wouldn't be due

6    until after the 4th of August.  So what are we talking about

7    here, two weeks?

8              MR. WEINSTEIN:  No.  And what I mean by that is, then

9    they'll file their motions, and what we don't want to hear, if

10   your Honor agrees that discovery should go forward, is, we need

11   an additional month or so to respond than we otherwise would

12   have because we haven't been doing anything because we're

13   hoping there's a stay.

14             THE COURT:  Look, I think the way to deal with that is

15   as follows.  You can serve your requests and the defense will

16   respond in the ordinary course, 30 days, or whatever else you

17   agree to, after you get the requests.  I'm talking about the

18   written discovery.  The question of when you will produce the

19   documents, assuming discovery is going to go forward after the

20   middle of August, is a separate question from your getting your

21   written responses to the document requests and any objections

22   there may be to the interrogatories, if there are any, served.

23   What about that?

24             MR. WEINSTEIN:  I think that makes sense.

25             Let me just add, just so your Honor understands, at

I6q1skac

1    least one of our concerns with delay is that, as we discussed

2    earlier, there are potentially additional parties here to join.

3         THE COURT:  I understand.

4         MR. WEINSTEIN:  We put a proposed schedule for that in

5    the order, which assumes the at least receipt of all the

6    documents from defendants so that we can make that

7    determination, at least from the documents, and we don't want

8    to delay that either, so we'd like to pursue those parties if

9    they exist, and we'll need the discovery to do that.

10        THE COURT:  Well, sure, I understand that.  But I

11   think that's not inconsistent, given where we are on the

12   calendar right now and the built-in periods of time that are

13   needed to formulate the discovery requests and to get any

14   objections on file.  There's just no inconsistency there.

15   We're talking about a very short period of time to give me the

16   opportunity to receive and look at the motion papers on the

17   motion to dismiss and make a decision about whether I think

18   there's sufficient merit there to delay the actual production

19   of documents and answers to interrogatories pending the outcome

20   of the motion or not.  And nobody should necessarily understand

21   that a ruling to stay -- we'll wait for the actual production

22   of information or that we're not going to wait -- as being a

23   ruling on the motion on the merits.  It's going to be a

24   practical assessment of what I think is practical among all the

25   circumstances.

I6q1skac

 1          Now the second part of what you said, Mr. Allison, had

 2    to do with use of any discovery in respect of whatever is going

 3    on in Denmark.  Given what I've laid out, I think at least for

 4    the moment that's academic, right?

 5          MR. ALLISON:  Yes, your Honor.  Although I do want to

 6    clarify your suggestion on what we would do in the interim.  If

 7    what you meant was that we would provide objections or any

 8    objections to the interrogatories during the period prior to

 9    the motion, I think that's certainly workable, your Honor.  If

10    the corollary to that was that we do not provide responses to

11    the interrogatories and document production until after you've

12    had a chance to evaluate or initially evaluate the motion, I

13    think that's a workable --

14          THE COURT:  That's exactly what I had in mind.

15          MR. ALLISON:  Great.  Yeah.

16          THE COURT:  Okay.  All right.  If there's nothing else

17    then, I will put this together into an order and we'll see

18    where we go.

19          And you know the multidistrict panel, with which I

20    have some vague familiarity, doesn't necessarily move with high

21    speed.  There are two-month intervals between hearings.  And so

22    if there's going to be such an application, the sooner it gets

23    on file, the better off everybody is from the standpoint of

24    moving all the cases forward.

25          Okay.  Anything else?

I6q1skac

1              MR. WEINSTEIN:  Not from plaintiff, your Honor.   Thank

2    you.

3              MR. ALLISON:  No, your Honor.

4              THE COURT:  Okay.  Thank you.

5              THE DEPUTY CLERK:  All rise.

6                              o0o

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25