*Indleveret via klageportalen*
Skatteankestyrelsen
Ved Vesterport 6, 6. sal
1612 København V



# Klage

**The Bradley London Pension Plan, SKATs Captia-nr. 16-1672145**

Vi skal hermed på vegne af Schaffelhuber Müller & Kollegen S.à r.l. som repræsentant for The Bradley London Pension Plan påklage den af SKAT afsagte afgørelse af den 6. april 2018 vedrørende tilbagekaldelse af tidligere afgørelser om refusion af udbytteskatter, jf. bilag 1.

Vi kan allerede på indeværende tidspunkt oplyse, at vi ønsker sagen visiteret til behandling ved Landsskatteretten.

Nærværende sag vedrører helt overordnet spørgsmålet om, hvorvidt der som hævdet af SKAT er grundlag for at foretage en tilbagekaldelse af SKATs tidligere – gyldige – afgørelser om refusion af udbytteskat.

Nærmere vedrører sagen overordnet spørgsmålet om, hvorvidt der er grundlag for at anfægte The Bradley London Pension Plans ejerskab til de aktier, der lå til grund for anmodningerne om refusion af udbytteskat.

## PÅSTAND

Der nedlægges påstand om, at SKATs afgørelse af den 6. april 2018 skal annulleres.

## SAGSFREMSTILLING

For en nærmere belysning af de faktiske omstændigheder i sagen henvises i første omgang til sagsfremstillingen indeholdt i SKATs afgørelse af den 6. april 2018, jf. bilag 1.

ADVOKAT
Torben Bagge
E-mail    tb@tvc.dk
Direkte   +45 8734 7530

SEKRETÆR
Ida Gercke-Jensen
E-mail    igj@tvc.dk
Direkte   +45 3318 6123

KØBENHAVN
Havneholmen 25, 9.
DK-1561 København V

TVC.DK

J.nr.   108630-2
Dato    22.6.2018

## ANBRINGENDER

Til støtte for den nedlagte påstand gøres det helt overordnet gældende, at der <u>ikke</u> er grundlag for at tilbagekalde SKATs tidligere afgørelser om refusion af udbytteskatter.

Det gøres i den forbindelse helt overordnet gældende, at der <u>ikke</u> som hævdet af SKAT er grundlag for at anfægte de (skattemæssige) ejerforhold til de omhandlede aktier.

Endvidere gøres det helt overordnet gældende, at SKATs afgørelse af den 6. april 2018 skal annulleres, således at de tidligere afgørelser om refusion af udbytteskatter står ved magt, samtidig med at det overlades til SKAT at foretage de nødvendige, fyldestgørende undersøgelser af sagen.

### 1    Ikke grundlag for at anfægte ejerskabet til aktierne

Det gøres helt overordnet gældende, at der ikke som hævdet af SKAT er grundlag for at anfægte de skattemæssige ejerforhold til de omhandlede aktier.

### 1.1    Manglende kapital

Det bestrides <u>for det første</u>, at The Bradley London Pension Plan – som hævdet af SKAT – ikke har haft økonomiske muligheder for at erhverve de aktier, hvorfra der er udbetalt udbytte, og som efterfølgende er søgt refunderet.

I den forbindelse bemærkes, at en køber af aktier (dvs. her pensionskassen) har utallige muligheder for at opnå finansiering til køb af aktier på nutidens globale finansmarkeder uden anvendelse af egenkapital. Udover muligheden for at optage klassisk lånefinansiering findes der adskillige andre finansielle instrumenter, som kan benyttes til at opnå den nødvendige finansiering for at erhverve såkaldt "beneficial ownership" henholdsvis juridisk ejerskab, og for så vidt angår den foreliggende sag retmæssigt (skattemæssigt) ejerskab over aktierne.

De forskellige aktører inden for finanssektoren tilbyder et stort udvalg af finansprodukter og afledte instrumenter (derivater), der giver øjeblikkelig adgang til likviditet (cash-flow) til betaling af værdipapirerne på leveringstidspunktet. Motivationen for investorer til at anvende likviditet i form af sådanne standardinstrumenter er at begrænse brugen af egne midler (egenkapital i modsætning til likviditet) til at forøge det forventede afkast af deres aktiver. Køberen af aktier vil hellere anvende eksterne likviditetskilder end at bruge egne midler.

For eksempel kan likviditet eller "cash-flow" til at betale for levering af aktierne genereres ved gennemførelsen af diverse transaktioner med derivater, som eksempelvis ved at udgive en såkaldt "deep in the money call option" eller en "prepaid performance contract over securities".

Investorer kan desuden skaffe sig likviditet ved at bruge Prime Broker Facilities for Securities Lending (herunder Repo-Pools) og "Intraday-Liquidity-Facilities", som giver adgang til finansiering samme dag ("just-in-case" eller "back-up"-faciliteter).

Det er en vigtig del af enhver "stock-broker" eller investment managers standardydelser at skaffe deres kunder tilgang til likviditet. Denne service – der ligner "prime broking" for institutionelle klienter – skyldes, at renten i dag er negativ. Den primære motivation er at anvende gratis penge som incitament til investering. En aktionær kan bruge sine egne aktiver, herunder aktier, til at skabe likviditet ved at stille dem sikkerhed for likviditetsfaciliteter. Herved vil aktionæren kunne opnå en meget betydelig likviditetsfacilitet. En sådan "intradag-likviditetsfacilitet" vil kun blive benyttet, hvis der ikke skulle være tilstrækkelig likviditet på tidspunktet for levering af aktierne (betaling mod levering – Delivery versus payment).

En såkaldt "Global Master Securities Lending Agreement" (GMSLA), som er "markeds-standarden" for de kontrakter, der tilbydes af prime-brokere, udføres normalt som en almindelig del af kontoåbningsproceduren mellem klienten og mægleren, allerede før nogen ordrer til køb af aktier er placeret. En mægler vil under en GMSLA vide, at hans kunde har adgang til likviditet til betaling af aktierne, allerede på datoen hvor købekontrakten indgås – hvilket er tre arbejdsdage forud for leveringen – idet kunden kan låne sine aktier ud til en tredjepart for en ubestemt tid og modtage op til 100 pct. af deres respektive pris i kontanter. Dette betyder, at ethvert køb af aktier vil generere den fornødne likviditet til at finansiere den fortsatte beholdning af aktierne efter deres køb, idet køber kan skaffe tilstrækkelig likviditet til at betale for købet ved at låne sine aktier til en tredjepart. Med andre ord: Aktielåntageren, der skulle bruge aktierne (som i dette eksempel tilhørte pensionskassen) efter udbyttedatoen, stillede sikkerhed for dette aktielån i form af kontanter (som blev indbetalt på pensionskassens konti) for varigheden af aktielånet.

SKAT anfører i den foreliggende afgørelse, at The Bradley London Pension Plan ikke har haft den fornødne kapital til at erhverve de aktier, hvorfra der er udbetalt udbytte, og for hvilke der er søgt refusion af udbytteskat. SKAT overser hermed, at størrelsen af et retssubjekts kapital ikke begrænser mulighederne for at erhverve aktiver, herunder aktier, da de finansielle midler til sådanne køb let kan skaffes på anden vis. Afgørende for om et givent retssubjekt kan erhverve aktier og øvrige aktiver, er, om den fornødne likviditet kan skaffes (ved substitution af egne midler). Det er derfor ikke korrekt som antaget af SKAT, at The Bradley London Pension Plan ikke har haft økonomisk mulighed for at erhverve de aktier, hvorfra der er udbetalt udbytte, og for hvilke der er søgt refusion af udbytteskat. Om dette er sket

ved benyttelse af et substitut for egenkapital eller på anden vis, er juridisk ligegyldigt, hvorfor SKAT baserer sin afgørelse på en fundamental misforståelse af de relevante økonomiske forhold ved at forudsætte, at ejerskab til aktier skal opnås via kapital, frem for likviditet der er fremskaffet på anden vis.

• • •   • • •

I overensstemmelse med Skatterådets afgørelse i SKM2010.26.SR er det således pensionskassen, der som udlåner af aktierne til tredjemand tillige er berettiget til at modtage udbyttet, der udbetales af selskabet, på de aktier pensionskassen ejer.

Det er således ikke korrekt, at pensionskassen ikke har kunnet betale for de pågældende handler.

### 1.2 Udbytterne samt de refunderede udbytteskatter er tilgået The Bradley London Pension Plan

For det andet bestrides det helt overordnet, at The Bradley London Pension Plan – som hævdet af SKAT – ikke har modtaget de udbytter, som anførtes i The Bradley London Pension Plans anmodninger om refusion af udbytteskat.

SKAT har ikke i den indklagede afgørelse nærmere begrundet dette synspunkt eller dokumenteret, at pensionskassen ikke har modtaget udbyttet eller refusionen.

Det bemærkes, at anmodningerne om refusion af udbytteskat ledsagedes af såkaldte Dividend Credit Advices (herefter DCA), der var udarbejdet af den eller de ansvarlige custodians. Heraf fremgik netop, at The Bradley London Pension Plan havde modtaget nettoudbyttet vedrørende de aktier, der fremgik af anmodningerne.

Ifølge SKATs daværende hjemmeside var DCA'erne tilstrækkelig dokumentation for modtagelsen af udbytter.

Det skal fremhæves, at de omhandlede DCA'er var udstedt af regulerede finansielle virksomheder, der var autoriserede til at udstede sådanne bekræftelser. The Bradley London Pension Plan kan med rette henvise til disse DCA'er, idet der ikke findes noget andet bevismateriale for modtagelse af et udbytte.

Endvidere skal det fremhæves, at SKAT – i det omfang SKAT har anfægtet DCA'ernes indhold – kunne have indhentet relevant dokumentation fra de andre professionelle aktører, der var involveret i gennemførelsen af de i sagen omhandlede transaktioner (dvs. professionelle aktører ansvarlige for tax-filings, share-brokerage, clearing, settlement, custody, safe-keeping samt kontoføring og administration). Dette har SKAT imidlertid forsømt.

Det bemærkes i den forbindelse, at samtlige de involverede professionelle aktører har været underlagt tilsyn af offentlige tilsynsmyndigheder, i den periode som sagen omhandler. Dertil kommer, at de involverede aktørers regnskaber og procedurer er blevet gennemgået og godkendt af uafhængige revisorer, i den periode som nærværende sag omhandler.

Særligt i relation til den eller de omhandlede custodians bemærkes, at SKAT har forsømt at anvende deres myndighed til at indhente relevante oplysninger og dokumentation med hensyn til gennemførelsen af de omtvistede transaktioner fra de ansvarlige tilsynsmyndigheder. Dette er særligt relevant, henset til at The Bradley London Pension Plan jo havde sine konti hos en custodian, der var reguleret og kontrolleret af de engelske tilsynsmyndigheder. Dette er af afgørende betydning, idet The Bradley London Pension Plan – ligesom alle andre kunder hos en custodian – selvsagt ikke har adgang til fortrolige oplysninger hos deres custodians.

### 1.3   Manglende selvangivelse i USA

For det tredje bestrides det helt overordnet, at The Bradley London Pension Plans manglende selvangivelse efter amerikansk skattelovgivning – som hævdet af SKAT – kan tillægges betydning, ved vurderingen af om The Bradley London Pension Plan var den retmæssige ejer af de aktier, hvorfra der er udbetalt udbytte, og som efterfølgende er søgt refunderet.

Det bestrides således, at The Bradley London Pension Plans manglende indsendelse af en "Form 5500"-selvangivelse i USA kan komme The Bradley London Pension Plan til skade.

En pensionskasse er ifølge den amerikanske skattelovgivning undtaget selvangivelsespligt, hvis dens aktiver ikke overstiger grænseværdien på USD 250.000 på den sidste dag i regnskabsåret.

Det bemærkes, at pensionskassens aktiver i løbet af året således godt kan have oversteget grænsen, når blot aktiverne på sidste regnskabsdag var mindre.

Der kan selvsagt være en lang række konkrete årsager til, at pensionskassens aktiver var mindre end USD 250.000 på sidste regnskabsdag.

For eksempel vil de gennemførte aktietransaktioner typisk have været gennemført på dette tidspunkt (køb og salg gennemført), med den virkning at aktierne ikke længere befandt sig i depotet.

Herudover er der en række omkostninger forbundet med de gennemførte transaktioner, som ligeledes medfører reduktion i pensionskassens aktiver.

Det er ligeledes muligt at foretage udlodninger fra pensionskassen, med den virkning at aktiverne på regnskabsdagen var mindre end USD 250.000.

I nærværende sag oversteg The Bradley London Pension Plans aktiver ved hvert af de respektive års udgang ikke grænseværdien på USD 250.000.

• • •  • • •

Det bestrides endvidere, at The Bradley London Pension Plans manglende indsendelse af en "Form 990-T"-selvangivelse i USA kan komme The Bradley London Pension Plan til skade.

Indsendelse af "Form 990-T"-selvangivelsen skal ske, hvis en 401K-pensionsplan har lånefinansieret indkomst.

Som anført ovenfor har The Bradley London Pension Plan teknisk set ikke lånt nogen midler til at betale for køb af danske aktier. The Bradley London Pension Plan udlånte som anført sine aktier til en tredjepart. Den kontante sikkerhed (cash-collateral), som blev stillet til afsikring af dette udlån af aktier, gjorde det muligt for The Bradley London Pension Plan at erlægge købsprisen for aktierne, idet tredjeparten (låntager) måtte stille sikkerhed (i form af kontanter) for aktielånet. Pensionskassen havde derved den fornødne likviditet til rådighed til at betale købsprisen for aktierne.

Likviditeten til erhvervelse af aktierne stammede på denne måde fra selve aktieudlånstransaktionen. The Bradley London Pension Plan havde med andre ord ikke lånefinansieret indkomst, hvorfor The Bradley London Pension Plan ikke var forpligtet til at indgive en "Form 990-T"-selvangivelse.

• • •  • • •

Endelig bemærkes, at selv om pensionskassen fejlagtigt måtte have undladt at selvangive i USA, kan en eventuel manglende selvangivelse på ingen måde medføre, at pensionskassen ikke er retmæssig ejer af de aktier, hvoraf der er søgt om udbytterefusion.

Det bemærkes i den forbindelse, at pensionskassen i USA er gyldigt stiftet og såvel formelt som reelt har retsevne.

### 1.4   Registreringer i Værdipapircentralen

For det fjerde bestrides det helt overordnet, at den manglende registrering af aktierne hos VP Securities A/S kan tillægges betydning, ved vurderingen af hvorvidt

The Bradley London Pension Plan var den retmæssige (skatteretlige) ejer af de aktier, hvorfra der er udbetalt udbytte, og som efterfølgende er søgt refunderet udbytteskat for.

Det gøres i den forbindelse gældende, at det ikke på baggrund af registreringerne i VP Securities er muligt at fastslå, hvorvidt The Bradley London Pension Plan var den retmæssige ejer af aktierne eller ej.

Dette vil således ikke være muligt i nærværende sag, hvor The Bradley London Pension Plan som anført har lånt aktierne ud til en tredjepart. I sådanne tilfælde vil denne tredjepart i forhold til VP Securities vises som aktionær, uanset at pensionskassen forbliver den retmæssige (skattemæssige) ejer af aktierne. Tilsvarende gælder tilfælde, hvor den retmæssige ejer har sine danske aktier på en omnibuskonto, eller såfremt custodians selv anvender andre (sub-)custodians.

### 1.5   Nystiftet pensionskasse med én deltager

Helt overordnet bemærkes, at det forhold, hvorvidt den pågældende pensionskasse er nystiftet eller kun har en enkelt deltager, ikke har nogen betydning for, hvorvidt pensionskassen er berettiget til at modtage udbytterefusion.

Såfremt pensionskassen opfylder betingelserne i dobbeltbeskatningsoverenskomsten mellem Danmark og USA, jf. artikel 22, stk. 2, litra e, jf. artikel 10, stk. 3, litra c, er pensionskassen efter overenskomsten berettiget til at få refunderet udbytteskatten.

Af overenskomsten fremgår, at Danmark og USA selv definerer, hvad der konstituerer en pensionskasse, og at dette, jf. også SKATs afgørelse, forstås som

> *"En juridisk person, der er organiseret efter lovgivningen i en kontraherende stat med det formål at yde pension eller lignende ydelser efter en fastsat ordning til arbejdstagere, herunder selvstændige erhvervsdrivende, forudsat at mere end 50 % af denne persons begunstigede medlemmer er fysiske personer, som er hjemmehørende i en af de kontraherende stater".*

Da pensionskassen efter amerikansk ret er gyldigt stiftet og omfattet af overenskomsten, skal Danmark anerkende, at pensionskassen er berettiget til udbytterefusion. Det bemærkes i den forbindelse, at SKAT tilsyneladende <u>ikke</u> fra de amerikanske myndigheder har fået oplyst, at pensionskassen ikke er gyldigt stiftet mv., idet SKAT ikke har henvist hertil i afgørelsen.

Det fremgår endvidere af OECD's bemærkninger vedrørende de amerikanske dobbeltbeskatningsaftaler, at samtlige 401 (k)-pensionsplaner med én enkelt del-

tager antages at være omfattet af de amerikanske aftaler, hvilket ligeledes kan dokumenteres i dokumenter fra den amerikanske kongres i forbindelse med afstemningen om ratifikationen af den amerikanske dobbeltbeskatningsoverenskomst.

## 2  SKATs afgørelse skal annulleres

Endvidere gøres det helt overordnet gældende, at SKATs afgørelse af den 6. april 2018 skal annulleres, således at de tidligere afgørelser om refusion af udbytteskatter står ved magt, samtidig med at det overlades til SKAT at foretage de nødvendige, fyldestgørende undersøgelser af sagen.

SKAT har ved afgørelse af den 6. april 2018, jf. bilag 1, foretaget en tilbagekaldelse af tidligere trufne afgørelser om refusion af udbytteskat.

Det skal i den forbindelse fremhæves, at SKATs tidligere afgørelser om refusion af udbytteskatter ubestrideligt var gyldige, hvilket også er lagt til grund af SKAT, idet en tilbagekaldelse af de tidligere afgørelser rent forvaltningsretligt forudsætter, at afgørelserne var gyldige.

De oprindelige afgørelser om refusion af udbytteskat blev truffet på baggrund af anmodninger, der <u>ubestridt</u> opfyldte de dagældende dokumentationskrav.

Det er først nu – flere år efter indgivelsen af refusionsanmodningerne – at SKAT stiller spørgsmålstegn ved validiteten af den dokumentation, som var vedlagt anmodningerne.

SKAT har imidlertid alene baseret sin efterfølgende opfattelse på *udokumenterede antagelser* om The Bradley London Pension Plans manglende ejerskab og udlån af de omhandlede aktier. SKAT har således ikke ført noget egentligt bevis for påstanden om manglende ejerskab mv., og påstanden er således aldeles udokumenteret.

SKAT har helt forsømt at indhente relevante oplysninger hos de mange professionelle udenlandske aktører, der ubestridt har været impliceret i de omhandlede transaktioner. Tilsvarende har SKAT forsømt at indhente relevante oplysninger hos udenlandske kontrol- og tilsynsmyndigheder.

Forsømmelsen af at indhente relevante oplysninger skal ses i lyset af, at SKAT via sine kontrolbeføjelser – i modsætning til The Bradley London Pension Plan – har reel mulighed for at indhente de af SKAT efterspurgte oplysninger.

Bevistvivlen vedrørende de forhold, som SKAT har problematiseret i afgørelsen af den 6. april 2018, må således tilskrives SKATs manglende effektive undersøgelser, hvilket selvsagt ikke kan komme The Bradley London Pension Plan til skade.

Klagegebyr på <u>kr. 400</u> er samtidig hermed indbetalt via klageportalen.

Med venlig hilsen
**TVC Advokatfirma**

*(signature)*
**Torben Bagge**
Partner, Advokat (H)

*(signature)*
**Kasper Bech Pilgaard**
Partner, Advokat (L), LL.M