*Submitted via the online Appeals Portal*
Tax Appeals Agency
Ved Vesterport 6, 6. sal
1612 Copenhagen V



# Appeal

**The Bradley London Pension Plan, Danish Customs and Tax Administration's Captia no. 16-1672145**

On behalf of Schaffelhuber Müller & Kollegen S.à r.l. as a representative of The Bradley London Pension Plan, we hereby appeal the decision of the Danish Customs and Tax Administration ("SKAT") dated April 6, 2018, concerning the revocation of previous decisions to refund dividend taxes (see Exhibit 1).

At this point, we can already inform you that we are seeking to have the case referred for processing by the Danish National Tax Tribunal.

The present case pertains to the overall question of whether, as SKAT claims, there is a basis for revoking SKAT's previous – and valid – decisions to refund dividend taxes.

More specifically, the case generally pertains to the questions of whether there is a basis for contesting The Bradley London Pensions Plan's ownership of the shares that formed the basis for the claims for refund of dividend taxes.

**ATTORNEY**
Torben Bagge
E-mail       tb@tvc.dk
Direct       +45 8734 7530

**SECRETARY**
Ida Gercke-Jensen
E-mail       igj@tvc.dk
Direct       +45 3318 6123

**COPENHAGEN**
Havneholmen 25, 9.
DK-1561 Copenhagen V

TVC.DK

Case no.    108630-2
Date        6/22/2018

### DEMAND

We demand the annulment of SKAT's decision of April 6, 2018.

### STATEMENT OF CLAIM

For further information on the factual circumstances of the case, please refer initially to the statement of claim set forth in SKAT's decision dated April 6, 2018 (see Exhibit 1).

A LIMITED LIABILITY PARTNERSHIP LAW FIRM    PHONE +45 70 11 08 00    THE LAW FIRM OF
Business Reg. No. 34 22 70 04               WWW.TVC.DK               TOMMY V. CHRISTIANSEN

PAGE 1/10


EXHIBIT 5A

**CLAIMS**

In support of the submitted claim, we strongly submit that there is <u>no</u> basis for revoking SKAT's previous decisions to refund dividend taxes.

In this regard, we strongly submit that, contrary to what SKAT has claimed, there is <u>no</u> basis for challenging the (fiscal) ownership of the shares in question.

Furthermore, we strongly submit that SKAT's decision dated April 6, 2018, must be revoked, thereby leaving the previous decisions to refund dividend taxes in full force and effect while leaving it up to SKAT to carry out any necessary investigations in the case.

**1.     No Basis for Challenging Ownership of the Shares**

In this regard, we strongly submit that, contrary to what SKAT has claimed, there is no basis for challenging the fiscal ownership of the shares in question.

**1.1    Lack of Capital**

<u>First of all</u>, we dispute the statement that The Bradley London Pension Plan did not have the financial ability to acquire the shares from which dividends were paid, and which were subsequently requested to be refunded.

In that respect, we point out that stock buyers (in this case, the retirement plan) has countless financing options for purchasing stock on today's global financial markets without using their equity. In addition to the option of obtaining classic financing through loans, several other financial instruments exist that can be used to obtain the necessary financing to acquire so-called beneficial ownership and rightful ownership, respectively, and, insofar as the present case is concerned, legal (fiscal) ownership of the shares.

The different players within the financial sector offer a wide range of financial products and derivative instruments (derivatives), which provide instant access to cash flow for payment of the securities at the time of delivery. The motivation for investors to use cash funds in the form of such standard instruments is to limit the use of their own funds (equity as opposed to cash) for the purpose of increasing the expected yield from their assets. Buyers of shares would rather use external cash sources than their own funds.

For example, liquid assets or cash flow for the payment of delivery of shares can be generated by performing various transactions using derivatives, such as by issuing a so-called "deep in the money call option" or a "prepaid performance contract over securities".

Investors can also acquire liquid assets by using Prime Broker Facilities for Securities Lending (including Repo-Pools) and Intraday-Liquidity-Facilities, which provide access to same-day financing (just-in-case or back-up facilities).

Providing clients with access to cash funds is an important part of the standard services of any stock broker or investment manager. This service, which resembles prime broking for institutional clients, is the result of today's negative interest rates. The primary motivator is to utilize free money as an incentive for investing. Shareholders can use their own assets, including shares, to create cash flow by using them as security for liquidity facilities. This way, shareholders can achieve a highly significant liquidity facility. Such an intraday liquidity facility will only be used if there are insufficient cash funds at the time when the shares are delivered (delivery versus payment).

A so-called "Global Master Securities Lending Agreement" (GMSLA) – which is the market standard for contracts offered by prime brokers – is normally performed as a regular part of the account opening procedure between the client and the broker, as early as before any stock purchase orders are made. Under a GMSLA, a broker will know that his client has access to cash to pay for the shares, as early as on the date when the purchase agreement is entered into – which is three business days prior to delivery – since clients can lend their shares to a third party for an indefinite time period and receive up to 100% of their respective price in cash. This means that any stock purchase will generate the liquidity needed for financing the continued stock holding after they are purchased since the buyer is able to acquire sufficient cash for the purchase by lending its shares to a third party. In other words: The share borrower – who needed to use the shares (which in this example belonged to the retirement plan) after the dividend date – used cash as security for this securities loan (the cash was deposited to the retirement plan's accounts) for the duration of the securities loan.

In the decision at hand, SKAT argues that The Bradley London Pension Plan did not have the necessary capital to acquire the shares on which dividends were paid and for which a dividend tax refund was requested. Thus, SKAT fails to notice that the size of the capital of a legal entity does not limit the options for acquiring assets, including stock, since the financial resources for such purchases can easily be obtained in some other way. Something that is crucial to whether a particular legal entity can acquire stocks and other assets is whether the necessary cash can be obtained (by substituting with the entity's own funds). Thus, SKAT's assumption that The Bradley London Pension Plan did not have the necessary capital to acquire the shares on which dividends were paid and for which a dividend tax refund was requested is not correct. Whether this happened

through the use of a substitute for equity or in some other way makes no difference from a legal standpoint. SKAT, therefore, is basing its decision on a fundamental misunderstanding of the relevant financial circumstances by presuming that stock ownership can only be achieved through capital, as opposed to cash funds acquired in some other way.

* * * * * *

Thus, in accordance with the resolution by the Danish Tax Assessment Council in SKM2010.26.SR, in these cases it is the retirement plan that – as a lender of the shares to a third party – is entitled to receive the dividends, which are paid on the shares owned by the retirement plan.

It is therefore not correct that the retirement plan was not able to finance the trades in question.

### 1.2     The Dividends and the Refunded Dividend Taxes Were Sent to The Bradley London Pension Plan

Secondly, we strongly dispute the statement that The Bradley London Pension Plan – as claimed by SKAT – did not receive the dividends listed in The Bradley London Pension Plan's claims for refund of dividend taxes.

In its proposed decision, SKAT provided nothing further to support this viewpoint and did not document that the retirement plan did not receive any dividends or refund.

We point out that the claims for dividend tax refunds were accompanied by the so-called "Dividend Credit Advices" (hereinafter "DCA"), which were prepared by the responsible custodian(s). According to these, The Bradley London Pension Plan did indeed receive the net dividends associated with the shares listed in the claims.

According to SKAT's website at the time, the DCAs were sufficient documentation for receiving dividends.

It should be pointed out that the DCAs in question were issued by regulated financial businesses that were authorized to issue such confirmations. The Bradley London Pension Plan is entitled to refer to these DCAs since there is no other evidence for receipt of dividends.

Furthermore, it should be pointed out that insofar as SKAT has challenged the contents of the DCAs, SKAT could have obtained the relevant documentation from other professional players who were involved in performing the relevant applicable transactions (i.e., professional players responsible for tax filings, stock

brokerage, clearing, settlement, custody, safekeeping, as well as account custody and administration). However, SKAT neglected to do so.

In this regard, we point out that all of the professional players involved were subject to the supervision of government supervisory authorities during the period covered by the case. In addition, the involved players' accounts and procedures were reviewed and approved by independent auditors for the period covered by the case at hand.

With respect to the involved custodian(s), we particularly point out that SKAT neglected to use their authority to obtain relevant information and documentation associated with the performance of the disputed transactions from the applicable supervisory authorities. This is particularly relevant given that The Bradley London Pension Plan had its accounts with a custodian that was regulated and controlled by the British supervisory authorities. This is crucial since The Bradley London Pension Plan – like all other customers of a custodian – obviously did not have access to their custodian's confidential information.

### 1.3     No U.S. Tax Return Filed

<u>Thirdly</u>, we strongly dispute that The Bradley London Pension Plan's lack of a tax return under the laws of the United States – as SKAT claims – is significant to the determination of whether The Bradley London Pension Plan was the rightful owner of the shares from which dividends were paid, and for which a refund was subsequently requested.

Thus, we dispute that the abstaining of The Bradley London Pension Plan from filing a Form 5500 tax return in the United States can be detrimental to The Bradley London Pension Plan.

According to U.S. law, a retirement plan is exempt from filing tax returns if its assets do not exceed the threshold of USD 250,000 on the last day of the fiscal year.

It should be pointed out that it is possible for the retirement plan's assets to have exceeded the threshold during the year, as long as the assets were below the threshold on the last day of the fiscal year.

Needless to say, there can be a large number of specific reasons why the retirement plan's assets were less than USD 250,000 on the last day of the fiscal year.

On that date, for example, any stock transactions will typically have been completed (completed purchases and sales), with the effect that the shares were no longer held in custody.

In addition, there is a series of expenses associated with the completed transactions, which likewise result in a reduction of the retirement plan's assets.

It is likewise possible that funds were distributed from the retirement plan, with the effect that the assets were below USD 250,000 on the reporting day.

In the case at hand, The Bradley London Pension Plan's assets did not exceed the threshold value of USD 250,000 at the end of either of the respective years.

* * * * * *

We further dispute that the abstaining of The Bradley London Pension Plan from filing a Form 990-T tax return in the United States can be detrimental to The Bradley London Pension Plan.

Filing the Form 990-T tax return is required if a 401(k) retirement plan has debt-financed income.

Technically speaking, and as stated above, the Bradley London Pension Plan did not borrow any funds to pay for the purchase of Danish stocks. As stated, The Bradley London Pension Plan loaned its shares to a third party. The cash that was used as collateral for this securities loan enabled The Bradley London Pension Plan to pay the purchase price for the shares since the third party (the borrower) had to provide collateral (in the form of cash) for the securities loan. Thus, the retirement plan had the available cash funds necessary to pay the purchase price for the shares.

This way, the cash for the acquisition of the shares originated from the actual securities loan transaction. In other words, The Bradley London Pension Plan did not have any debt-financed income; hence The Bradley London Pension Plan was not required to file a Form 990-T tax return.

* * * * * *

Finally, we point out that even if the retirement plan had erroneously omitted to file a U.S. tax return, there is no way that any missing tax return could cause the retirement plans to not be the rightful owners of the shares for which they have filed for dividend refund.

In this regard, it should be pointed out that the retirement plan is legally registered in the United States and has formal as well as actual legal personality.

### 1.4  Registrations with VP Securities

Fourthly, we strongly dispute that the lack of registration of the shares with VP Securities A/S is significant to the determination of whether The Bradley London Pension Plan was the (fiscally) rightful owner of the shares from which dividends were paid, and for which a dividend tax refund was subsequently requested.

In this regard, we point out at based on the registrations with VP Securities, it is not possible to determine whether or not The Bradley London Pension Plan was the rightful owner of the shares.

Therefore, this will not be possible in the case at hand where, as stated, The Bradley London Pension Plan has loaned the shares to a third party. In such cases, this third party will appear at VP Securities as a shareholder, notwithstanding that the retirement plan remains the legal (fiscal) owner of the shares. The same principle applies if the rightful owner keeps its Danish shares on an omnibus account or if the custodians themselves use other (sub)custodians.

**1.5   Newly Established One-Participant Retirement Account**

As an overriding principle, it should be pointed out that the fact that the retirement plan in question is newly established – or has only one participant – has no bearing on whether the retirement plan is entitled to receive a refund on its dividend taxes.

If the retirement plan meets the requirements of the Convention for the Avoidance of Double Taxation between Denmark and the United States, as set forth in Article 22(2)(e) and Article 10(3)(c), then the retirement plan is entitled to a refund of the dividend taxes, according to the Convention.

According to the Convention, Denmark and the United States make their own definition for what constitutes a retirement plan, which – as is also stated in SKAT's own decision – is understood to be as follows:

> *"A legal person, whether or not exempt from tax, organized under the laws of a contracting state to provide a pension or other similar benefits to employees, including self-employed individuals, pursuant to a plan, provided that more than 50% of the person's beneficiary members are individuals resident in either contracting state."*

Since the retirement plan is established legally and lawfully according to U.S. law and is covered by the Convention, Denmark must acknowledge that the retirement plan is entitled to a refund of the dividend taxes. In this regard, it should be pointed out that, apparently, SKAT has not been informed by the U.S. authorities that the retirement plan is not legally established, etc., inasmuch as SKAT has made no reference to this in the decision.

Furthermore, according to OECD's comments regarding U.S. double taxation conventions, each and every 401(k) retirement plan with one participant is presumed to be covered by the U.S. conventions. This can also be documented in documents from the United States Congress in connection with the vote on the ratification of the U.S. double taxation convention.

## 2.   SKAT's Decision Must Be Annulled

Furthermore, we strongly submit that SKAT's decision dated April 6, 2018, must be revoked, thereby leaving the previous decisions to refund dividend taxes in full force and effect while leaving it up to SKAT to carry out any necessary investigations in the case.

In its decision from April 6, 2018 (see Exhibit 1), SKAT revoked its previous decisions to refund the dividend taxes.

With respect to that, we point out that SKAT's previous decisions to refund dividend taxes were indisputably valid. This is also SKAT's argument; from an administrative law perspective, a revocation of the previous decisions presupposes that the decisions were valid.

The original decisions to refund the dividend taxes were made based on <u>uncontested</u> claims that met the documentary requirements in effect at the time.

Not until now – several years after the claims for refunds were submitted – does SKAT question the validity of the documentation that was submitted with the claims.

However, SKAT has based its subsequent understanding solely on *undocumented assumptions* regarding The Bradley London Pension Plan's lack of ownership and lending of the shares in question. Thus, SKAT has presented no actual evidence in support of its claim regarding lack of ownership, etc.; hence, the claim totally lacks documentation.

SKAT has entirely neglected to obtain relevant information from the many professional foreign players, which indisputably have been involved in the applicable transactions. Likewise, SKAT has neglected to obtain relevant information from foreign review and supervisory authorities.

The failure to obtain relevant information must be seen in the light of the fact that with its powers of control, SKAT – as opposed to The Bradley London Pension Plan – has the actual ability to obtain the information requested by SKAT.

The evidentiary problems associated with the circumstances with which SKAT has taken issue in the decision dated April 6, 2018, are attributable to SKAT's lack of

effective investigations, which obviously cannot be to the detriment of The Bradley London Pension Plan.

An appellate fee of DKK 400 was paid simultaneously with this filing through the Appeals Portal site.

Sincerely,
**TVC Advokatfirma**

..................................................           ..................................................
**Torben Bagge**                                              **Kasper Bech Pilgaard**
Partner, Attorney at Law (H)                                  Partner, Attorney at Law (L), LL.M.