**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

SKAT TAX REFUND SCHEME LITIGATION

This document relates to all cases.

MASTER DOCKET

18-cv-4047 (LAK)

### PLAINTIFF SKAT'S MEMORANDUM OF LAW IN OPPOSITION TO THE CONSOLIDATED DEFENDANTS' MOTION TO DISMISS THE COMPLAINTS

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff SKAT (Customs and Tax Administration of the Kingdom of Denmark)*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    SKAT Discovers the Fraud............................................................................................ 4

    The Defendants' Participation in the Fraud.................................................................. 4

LEGAL STANDARDS ........................................................................................................6

ARGUMENT ........................................................................................................................7

I.    THE REVENUE RULE DOES NOT APPLY TO SKAT'S CLAIMS. .............................7

    A.    SKAT's Claims Do Not Seek To Enforce Danish Revenue Laws. ......................8

    B.    Neither The Case Law Nor The Treaty Precludes SKAT's Claims. ...................10

    C.    The Revenue Rule Does Not Bar All Claims By A Foreign State
        For Damages Suffered In Its Sovereign Capacity.................................................12

II.    SKAT ADEQUATELY PLEADED FRAUD, AIDING AND ABETTING
      FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS...............................15

    A.    SKAT Has Adequately Pleaded The Defendants' Knowledge And Intent. ..........15

        1.    SKAT's factual allegations. ....................................................................16

        2.    The arguments that SKAT has not pleaded Defendants' knowledge
            and intent fail. .........................................................................................18

    B.    SKAT Has Pleaded That Each Defendant Substantially Assisted the Fraud.........20

    C.    SKAT Pleaded False Representations Of Material Fact
        By The Authorized Representative and Incorporator Defendants.........................21

III.    THE UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, AND
       PAYMENT BY MISTAKE CLAIMS ARE NOT DUPLICATIVE. ...............................23

CONCLUSION....................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Aminov*, No. 11 CV 2391 (MKB), 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014) .................................................................................................................24

*Aramony v. United Way of America*, 949 F. Supp. 1080 (S.D.N.Y. 1996) ...................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................6

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103 (2d Cir. 2001) ...................................................................................................... *passim*

*Banco do Brasil v. A.C. Israel Commodity Co.*, 12 N.Y.2d 371 (1963).................................11, 12

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) .................................................12, 13

*Buyers and Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, 575 F. Supp. 2d 499 (S.D.N.Y. 2008)..............................................................................................23

*In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279 (E.D.N.Y. 2002).........................................10

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ......................................................15

*Employees' Retirement System of Government of the Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015)...................................................................................................18

*In re Estate of Witbeck*, 245 A.D.2d 848 (3d Dep't 1997) ....................................................23, 25

*European Community v. RJR Nabisco, Inc.*, 355 F.3d 123 (2d Cir. 2004)........................... *passim*

*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) ...................................15

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ..........................................................6

*Hoyle v. Dimond*, 612 F. Supp. 2d 225 (W.D.N.Y. 2009)......................................................24, 25

*J.C. Penney Corp., Inc. v. Carousel Center Co., L.P.*, 635 F. Supp. 2d 126 (N.D.N.Y. 2008) ...............................................................................................................25

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005) ................................21

*Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392 (S.D.N.Y. 2013) .................................................................................................................................24

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) .........................................................................23

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 23 F. Supp. 3d 242 (S.D.N.Y. 2014).........................................................................................................24

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) .......................................15, 16

*McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343 (S.D.N.Y. 2002) ............20

*Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504 (S.D.N.Y. 2016) ........................... *passim*

*Obeid v. Mack*, 14CV6498-LTS-MHD, 2016 WL 5719779 (S.D.N.Y. Sept. 30, 2016) .......................................................................................................................24

*In re Parmalat Securities Litigation*, 377 F. Supp. 2d 390 (S.D.N.Y. 2005) ...............22

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 652 F. Supp. 2d 495 (S.D.N.Y. 2009)...........................................21

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ................................................8

*Republic of Colombia v. Diageo North America Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007)...............................................................................................9, 13, 14

*Republic of Ecuador v. Phillip Morris Companies, Inc.*, 188 F. Supp. 2d 1359 (S.D. Fl. 2002) ............................................................................................................11

*Republic of Haiti v. Duvalier*, 211 A.D.2d 379 (1st Dep't 1995)...............................8, 14

*Republic of Honduras v Phillip Morris Companies, Inc.*, 341 F.3d 1253 (11th Cir. 2003) .........................................................................................................................11

*Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986),.......................7, 8, 14

*Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988).........................8, 14

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001)..............................6

*Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*, 64 A.D.3d 472 (1st Dep't 2009) ................................................................................................15

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010)....................................................................23, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).............................18

*Unicredito Italiano SPA v. JP Morgan Chase Bank*, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)..............................................................................................................21

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*United States v. Albinson*, Civ. No. 09-1791 (DRD), 2010 WL 3258266 (D.N.J. Aug. 16, 2010) ........................................................................................................25

*In re Yukos Oil Co. Sec. Litigation*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...............................................................................9, 10

**Statutes and Rules**

28 U.S.C. § 1332(a)(4)..........................................................................................................12

I.R.C. § 414(v)(2)(B)(i) ..........................................................................................................6

I.R.C. § 415(c)(1)(A) ..............................................................................................................6

Fed. R. Civ. P. 9(b) ...........................................................................................................6, 15

Fed. R. Civ. P. 12(b)(1).........................................................................................................6

Fed. R. Civ. P. 12(b)(6).........................................................................................................6

**Other Authorities**

Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001)...................................................................4

Danish Withholding Tax Act § 65 ........................................................................................4

Plaintiff SKAT, the Customs and Tax Administration of the Kingdom of Denmark, respectfully submits this memorandum of law in opposition to the Defendants' motion to dismiss.[1]

## PRELIMINARY STATEMENT

In these consolidated actions, SKAT seeks to recover some of the over $2.1 billion that Defendants and others deceived SKAT into paying based on fraudulent claims for refunds of dividend withholding tax.  The Plan Defendants submitted documents to SKAT falsely purporting to show that they owned shares in Danish companies, on which the companies had paid dividends and withheld tax.  In fact, the Plan Defendants did not own the shares that they claimed to own, did not earn the dividends that they claimed to have earned, had not, therefore, suffered any withholding of tax on the dividends, and were not entitled to any refunds whatsoever.

Defendants' principal argument, that this litigation is barred by the revenue rule, a common law doctrine that one sovereign will not collect another sovereign's tax revenues, fails because SKAT is not claiming that Defendants are taxpayers who owe tax revenues to Denmark. SKAT's claims are based on the fundamental factual allegation that Defendants were *not*

---

1.  SKAT commenced 49 similar actions in this district, all of which were assigned to this Court.  On June 26, 2018, the Court consolidated the 49 actions pending before it for all pretrial purposes and ordered that the defendants shall file a single memorandum in support of their motions to dismiss.  (Pretrial Order No. 1, ECF No. 16.)  On September 5, 2018, the Court consolidated another four actions, newly transferred from the District of Connecticut, with the 49 actions already pending before it.  (Pretrial Order No. 3, ECF No. 40.)  On September 20, 2018, Defendant Roger Klugman, a defendant in all four newly transferred actions, joined in the Defendants' motion to dismiss.  (ECF No. 45.)  "Defendants" refers to the defendants in the 53 consolidated actions pending before this Court.  "Plan Defendants" refers to the pension plans that submitted fraudulent dividend withholding tax refund claims to SKAT.  "Authorized Representative Defendants" refers to the Defendants who signed powers of attorney authorizing payment agents to submit fraudulent dividend withholding tax refund claims to SKAT.  "Incorporator Defendants" refers to the Defendants who incorporated business entities associated with the Plan Defendants that submitted fraudulent dividend withholding tax refund claims to SKAT.

taxpayers, did *not* receive any dividends from Danish companies, did *not* owe Denmark any taxes, and did *not* have any Danish taxes withheld from them.  Thus, the Defendants were not subject to Danish taxation and SKAT does not claim that Defendants owed or owe Denmark any taxes.

In short, these actions are not to collect revenue; they are to recover the money that Defendants stole from SKAT by falsely pretending to be taxpayers, and falsely representing that they owned shares that they did not, in fact, own, and had received dividends that they did not, in fact, receive.  The revenue rule does not protect theft.

Defendants' objections to the merits of SKAT's allegations similarly fail.  SKAT has sufficiently pleaded the elements of its fraud, aiding and abetting fraud, and negligent misrepresentation claims against each of the Defendants.  As this Court observed, SKAT's allegations put the Defendants on notice of which of statements SKAT alleges were fraudulent and why.[2]  Each of the refund requests that the Defendants submitted to SKAT included a claim form identifying the Plan Defendant and the amount of the refund claim, documents that represented falsely that the Plan Defendant held shares in Danish companies and received dividends on those shares, and a signed power of attorney from the Authorized Representative Defendant authorizing the payment agent to submit the fraudulent refund claim to SKAT.  No more notice is required at this stage of the litigation.

The allegations also give rise to a strong inference that the Defendants knew that their representations were false.  In addition to the obvious motive to take money to which they were not entitled, the circumstances of fraud undermine any protestation of innocence.  For example,

---

2.   (Declaration of Sarah L. Cave, dated Oct. 1, 2018, ("Cave Decl.") Ex. 1 (June 26 Hr'g Tr.) at 7:1-6 ("I thought the fraud claim was that a representation was made by or on behalf of every single defendant to the effect that the person who ultimately received the payment had paid, had obtained a refund premised on their ownership of stock in Danish companies, when in truth and in fact they didn't own the stock that they claimed[.]")).

Defendant Bradley London Plan purported to own shares worth close to $1 billion.  That the Defendants believed they could have owned or "financed" such large investments in one-participant 401(k) plans—as they now suggest, without providing any details—is not a reasonable inference, and is certainly less plausible than the obvious inference that the Defendants knew that, in fact, the Plan Defendants simply did not own the shares.

Finally, SKAT's unjust enrichment, money had and received, and payment by mistake claims are not duplicative of its other claims or each other.  Rather, SKAT has properly pleaded those claims as alternative bases for recovery.

## STATEMENT OF FACTS

These cases arise from a fraudulent scheme that deceived SKAT into paying over 12.7 billion Danish Kroner, the equivalent of approximately $2.1 billion, to over 300 entities around the world that falsely represented that they were entitled to refunds of amounts withheld from dividends paid by Danish companies.  (Bradley London Compl. ¶¶ 2, 3.)[3]

Danish law requires Danish companies to withhold 27 percent of the amount of dividends they pay to shareholders.  (*Id.* ¶¶ 3, 20.)[4]  Under a treaty between Denmark and the United States,[5] some U.S. shareholders may be entitled to full or partial refunds.  (*Id.* ¶¶ 3, 21.)

---

3. The allegations in SKAT's complaints in these consolidated actions are substantially similar.  Unless otherwise indicated, citations to the allegations in the complaints are to the complaints SKAT filed against The Bradley London Pension Plan and Doston Bradley, No. 1:18-cv-04047, and The Aria Pension Plan, Roger Lehman, and Gavin Crescenzo, No. 1:18-cv-05147.  SKAT's complaints against The Bradley London Plan and Doston Bradley ("Bradley London Compl.") and The Aria Pension Plan, Roger Lehman, and Gavin Crescenzo ("Aria Compl.") are, respectively, exhibits 1 and 2 to the Declaration of Mark D. Allison, dated August 15, 2018 ("Allison Decl.").

4. Danish Withholding Tax Act § 65.

5. Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 10, ¶ 2(c), May 6, 1948, S. Treaty Doc. No. 106-12 (effective date Jan. 1, 2001).

**SKAT Discovers the Fraud**

On June 15, 2015, SKAT received a tip that certain dividend withholding tax refund claims made under a treaty between Denmark and Malaysia may have been fraudulent.  (*Id.* ¶ 6.)  As a result, SKAT began an investigation and discovered that the Malaysian claimants' refund requests "misrepresent[ed] that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends."  (*Id.*)  SKAT's investigation eventually revealed that the fraudulent scheme was widespread, and involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom and Luxembourg.  (*Id.* ¶ 7.)

**The Defendants' Participation in the Fraud**

Each of the Defendants participated in the fraudulent scheme.  The fraudulent refund requests each involved one of the Plan Defendants, one of the Authorized Representative Defendants, a payment agent, and a broker-custodian.  (*Id.* ¶ 25.)  In some cases, an Incorporator Defendant, who incorporated the business entity associated with the relevant Plan Defendant, also participated in submitting the fraudulent refund requests to SKAT.  (*See, e.g.*, Aria Compl. ¶¶ 40-41.)

Each of the Defendants' refund requests falsely represented that the Plan Defendant owned a large amount of shares in major Danish companies, and had received dividends, net of withholding tax, on their shares.  (Bradley London Compl. ¶¶ 3, 36.)  Defendants directed their payment agents to submit the fraudulent refund requests to SKAT.  (*Id.* ¶¶ 41-45.)

Certain Authorized Representative Defendants participated in submitting fraudulent refund requests on behalf of multiple Plan Defendants.  For instance, in two short periods from October 20 to 24, 2014 and March 5 to 10, 2015, Defendant Roger Lehman signed powers of

attorney for 48 of the 277 United States entities that pretended to own shares in Danish-listed companies and that fraudulently claimed tax refunds from SKAT.  (Aria Compl. ¶ 45.)

Certain of the Incorporator Defendants incorporated the business entities associated with multiple Plan Defendants.  For instance, Defendant Gavin Crescenzo was actively involved with at least 18 of the entities that pretended to own shares in Danish-listed companies and that submitted fraudulent refund requests to SKAT, fifteen of which had powers of attorney signed by Defendant Lehman.  (*Id.* ¶ 40.)  Those fifteen companies were incorporated during a six-week period at the end of 2014, just months before the affiliated plans submitted their initial fraudulent refund claims to SKAT.  (*Id.* ¶ 41.)  Each of the fifteen companies was dissolved on the same date, March 14, 2016, less than seven months after SKAT stopped making payments on the fraudulent claims.  (*Id.* ¶ 42.)  Defendant Crescenzo was listed on the Notice of Winding Up or the Articles of Termination for each of the fifteen dissolved entities.  (*Id.*)

### SKAT's Decisions

After discovering the fraud, SKAT issued decisions finding that the Defendants were not entitled to the dividend withholding tax refunds that they fraudulently claimed.  In appealing SKAT's decision in Denmark, Defendant Bradley London Plan has admitted that it was established as a one-participant 401(k) plan in September 2014, just two months before the dividend date for the first dividend it claimed to have received.  (Allison Decl. Ex. 4-A (SKAT's decision) at 6-7, Ex. 5-A (Bradley London appeal) at 7-8.)

Defendant Bradley London Plan made 16 false refund requests to SKAT in the two-month period from April to May 2015, which resulted in SKAT paying Defendant Bradley London Plan over $11 million.  (Bradley London Compl. ¶¶ 36-38.)  In the two sample refund requests that Defendants submitted with their motion, Defendant Bradley London Plan falsely

represented that it owned (i) over 6 million shares of Novo Nordisk A/S-B, generating a dividend of over $4.7 million, from which over $1.2 million was withheld; and (ii) over 40,000 shares of AP Moeller-Maersk A/S-B, generating a dividend of over $12.4 million, from which over $3.3 million was withheld.  (Allison Decl. Ex. 3 at 3-4.)  The fact that, for the years 2014 and 2015, a one-participant plan was limited to a maximum of $116,500[6] in contributions casts serious doubt on how such a plan could possibly have bought the nearly $1 billion worth of shares required to generate the amount of dividends it purported to receive—or how anyone associated with the plan could possibly have believed that the plan owned that much stock.  (Allison Decl. Ex. 4-A at 5-7, Ex. 5-A at 2-4.)

## LEGAL STANDARDS

On a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure, all of the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (Rule 12(b)(1) motion); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000) (Rule 12(b)(6) motion).

A complaint should not be dismissed if it contains sufficient factual allegations that, accepted as true, state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009).  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678.

With respect to fraud claims, while the circumstances constituting the fraud must be stated "with particularity," the "intent, knowledge, and other conditions of a person's mind" may be "alleged generally."  Fed. R. Civ. P. 9(b).

---

6.   I.R.C. §§ 414(v)(2)(B)(i) & 415(c)(1)(A); Notice 2013-73, 2013 I.R.B. 598; Notice 2014-70, 2014 I.R.B. 905.

## ARGUMENT

### I.     THE REVENUE RULE DOES NOT APPLY TO SKAT'S CLAIMS.

SKAT's claims are not barred by the revenue rule because SKAT's claims do not seek to collect tax revenue.  (Section I.A, *infra*.)  This fact distinguishes the revenue rule cases on which Defendants rely, in which foreign sovereigns claimed damages arising from tax evasion schemes. For the same reason, the Danish-U.S. tax treaty on which the Defendants rely does not apply. (Section I.B, *infra*.)  Neither the revenue rule nor the tax treaty protects anyone who wrongfully takes a foreign government's money.

The revenue rule is a common law doctrine that posits "that courts of one sovereign will not enforce final tax judgments or unadjudicated tax claims of other sovereigns."  *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109 (2d Cir. 2001). Under the rule, a federal court may decline to hear claims that, directly or indirectly, are "for tax revenues, such that the whole object of the suit is to collect tax for a foreign revenue."  *European Community v. RJR Nabisco, Inc.*, 355 F.3d 123, 131 (2d Cir. 2004) ("*European Community I*") (internal quotation and citation omitted).

The revenue rule is "not absolute" and does not bar all claims by sovereigns that involve foreign revenue laws.  *Id.*  The rule "will not be triggered where the sovereignty and extraterritoriality concerns that inform the rule's application are not present."  *Id.* at 131-32.  As the Second Circuit has recognized, not every case involving foreign tax laws necessarily implicates the revenue rule.  *See Canada*, 268 F.3d at 113.

Courts routinely entertain suits by foreign governments to recover stolen money.  For example, in *Republic of Philippines v. Marcos*, the Second Circuit affirmed the grant of a preliminary injunction barring any transfer or encumbrance of New York real estate obtained illegally with funds stolen from the Philippines government.  806 F.2d 344, 355 (2d Cir. 1986).

Similarly, in *Republic of Philippines v. Marcos*, the Ninth Circuit asserted jurisdiction over claims that defendants "stole public money."  862 F.2d 1355, 1359 (9th Cir. 1988).  The Ninth Circuit noted that fraud and theft are "acts susceptible of concrete proofs that need not involve political questions."  *Id.* at 1361.  And in *Republic of Haiti v. Duvalier*, a New York appellate court granted the government of Haiti summary judgment on its claims seeking recovery of funds stolen from its public treasury.  211 A.D.2d 379, 384-85 (1st Dep't 1995).  All these cases reflect the general principle that a foreign sovereign is entitled to sue in a United States court to recover, in this case, stolen money.  *See Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978) ("a foreign nation is generally entitled to prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do").

A.    <u>**SKAT's Claims Do Not Seek To Enforce Danish Revenue Laws.**</u>

The revenue rule does not bar the Court from hearing SKAT's claims for the simple reason that SKAT is not seeking to collect unpaid tax.  *Cf. European Community I*, 355 F.3d at 131 (revenue rule bars courts from hearing claims where "the whole object of the suit is to collect tax for a foreign revenue").  Far from seeking to collect tax, SKAT affirmatively alleges that the Plan Defendants are not taxpayers, did not own the shares or dividends they claimed to own, and therefore did not receive payments from which any Danish withholding tax was withheld.  (Bradley London Compl. ¶ 37 (the Defendants "did not hold the shares" and "had no dividend tax withheld").)  SKAT alleges that Defendants had no legitimate connection to the Danish tax system, and instead fraudulently misrepresented themselves as the owners of shares in Danish companies from whom they received dividends from which Danish taxes were withheld in order to steal money from SKAT through the guise of tax refunds to which they had no entitlement.  (*Id.* ¶ 48 (Defendants "never owned the shares" they purported to own, "never

received any dividend from Danish companies in which" they were "a purported shareholder" and were "not entitled to claim a refund of dividend withholding tax").)

That Defendants perpetrated their fraud by abusing the Danish tax refund system does not implicate any of the intertwined sovereignty and separation of powers concerns that underscore modern application of the revenue rule. *See Canada*, 268 F.3d at 113 (concerns about sovereignty and extraterritoriality "are not implicated in every case involving foreign tax laws"). In considering SKAT's claims, the Court is not being asked to enforce Danish tax laws. Certain Danish laws can be recognized as background to the Defendants' theft of money from SKAT: Section 65 of the Danish Withholding Tax Act, which provides for Danish companies to withhold 27 percent of dividends, and the double taxation treaty between Denmark and the United States, which exempts U.S. pension plans from Danish tax on dividends. Merely recognizing a foreign tax law and its effects, however, does not give rise to the same policy and political concerns that would feature in a "core revenue rule case in which the court must rule on the validity of the foreign law." *Republic of Colombia v. Diageo North America Inc.*, 531 F. Supp. 2d 365, 388 (E.D.N.Y. 2007).

Defendants provide no support for their assertion that resolving these cases "would require the Court to determine whether under *Danish* tax law the Plans 'owned' or were deemed to own the shares." (Defs. Mem. 10 (emphasis in original).) Defendants provide no basis to challenge the allegations that the Plan Defendants did not own the shares, nor do they explain how determining whether the Plan Defendants owned the shares would somehow require the Court to enforce Danish tax law. In this respect, *In re Yukos Oil Co. Sec. Litigation* is instructive. No. 04 Civ. 5243 (WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006). There, the defendants argued that the revenue rule barred plaintiffs' securities fraud claims arising from the

defendants' violations of Russian tax laws.  *Id.* at *8.  Although Judge Pauley cited in the "Background" section of the opinion certain features of the Russian tax code as context for the proceeding, the court found the revenue rule "inapposite" because the plaintiffs were not asking the court "to enforce Russian tax judgments," and so the court would not need to "evaluate the policies" behind the Russian tax laws.  *Id.* at *3, *8; *see also In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 293 n.9 (E.D.N.Y. 2002) (revenue rule did not apply because the court would not be "commenting on the validity" of the Canadian tax incentive system, but rather "deciding whether the defendants' admitted abuse of that scheme defrauded" investors).

Defendants' submissions of a sample of SKAT's administrative findings and an appeal of those findings only serves to reinforce the conclusion that this case involves fraud, not the enforcement of Danish tax law.  For example, Defendant Bradley London Plan suggests various theoretical transactions to explain how it might have purchased (notably, not that it actually did purchase) the massive number of shares that formed the basis for its refund claims.  (Allison Decl. Ex. 5-A at 2-7.)  The hypothetical transaction imagined by Defendant Bradley London Plan, in which it, a newly-minted 401(k) plan that had received no more than $118,000 in total contributions, somehow purchased millions of shares of Danish companies, is more suggestive of fraud than it is of bona fide transactions.  Thus, the revenue rule does not apply here because SKAT is seeking to recover the money that Defendants stole from it—not to collect a tax that SKAT affirmatively alleges the Defendants never owed.

### B.   Neither The Case Law Nor The Treaty Precludes SKAT's Claims.

Defendants cannot rely on the revenue rule cases they cite because the cases involve claims by foreign governments against taxpayers to recover taxes that they should have paid. SKAT, by contrast, is not claiming any unpaid taxes.  SKAT acknowledges that the Defendants never owed any taxes to Denmark.  Instead, SKAT's claimed damages are the monies that

Defendants stole from SKAT by making fraudulent representations that they owned shares and dividends.  The revenue rule does not bar a claim to recover stolen money.

In *Canada*, the Attorney General of Canada brought claims against cigarette companies "for damages based on lost tax revenue and additional law enforcement costs" resulting from the defendants' scheme "to avoid various Canadian cigarette taxes."  268 F.3d at 105.  In concluding that Canada's claim fell "within the revenue rule's proscriptions," the court noted that, "at bottom, Canada would have a United States court require defendants to reimburse Canada for its unpaid taxes."  *Id.* at 109, 132.  Similarly, in *Republic of Honduras v Phillip Morris Companies, Inc.*[7] and *Republic of Ecuador v. Phillip Morris Companies, Inc.*,[8] the sovereigns alleged that the defendant cigarette companies "engaged in various illegal schemes to avoid paying . . . taxes" they otherwise owed.  *Honduras*, 341 F.3d at 1255.[9]  In finding the revenue rule barred the claims, the Eleventh Circuit noted that the "complaints make clear that Big Tobacco's schemes to avoid the Republics' tax laws is at the heart of all of their claims."  *Id.* at 1257; *see also Ecuador*, 188 F. Supp. 2d at 1363 ("the substance of the claims is to enforce Ecuadorian tax laws").  And in *European Community I*, the court found that the revenue rule barred claims by the European Community and its member states alleging that the defendant cigarette companies directed and facilitated contraband cigarette smuggling "so as to avoid paying the customs duties and excise taxes."  355 F.3d at 128.  Finally, in *Banco do Brasil v. A.C. Israel Commodity Co.*, the New York Court of Appeals dismissed an action by "an instrumentality of the Government of Brazil" for damages caused "by illegally circumventing the foreign exchange regulations of

---

7.   341 F.3d 1253 (11th Cir. 2003).

8.   188 F. Supp. 2d 1359 (S.D. Fl. 2002).

9.   The Eleventh Circuit's decision in *Honduras* decided six consolidated appeals, including the Republic of Ecuador's appeal of the Southern District of Florida's *Ecuador* decision.  *Id.*

11

Brazil," which the Court held was a claim "to enforce what is clearly a revenue law."  12 N.Y.2d 371, 374, 377 (1963).

Nor does the treaty between the United States and Denmark require the Court to dismiss SKAT's claims.  The import of the treaty is that Denmark may *not* tax dividends paid by a Danish company to a United States pension fund at all.  Defendants' argument that the treaty is a bar to SKAT's claims because "[n]owhere in the Denmark Treaty is Denmark granted a right of action to collect its taxes through the U.S. court system," (Defs. Mem. 16), founders on the simple fact that SKAT's claims do not seek to collect taxes.  (*See* Section I.A, *supra*.)[10]

### C.     The Revenue Rule Does Not Bar All Claims By A Foreign State For Damages Suffered In Its Sovereign Capacity.

Defendants' argument that the revenue rule bars all claims by foreign states, with a "limited exception" for claims based on the sovereign's commercial activity, (Defs. Mem. 12-15), is clearly wrong.  As demonstrated above, courts routinely allow foreign sovereigns to claim stolen money and property.  (*See* pgs. 7-8, *supra*.)  The revenue rule—which is a limited exception to Congress' conferral of jurisdiction on federal courts to entertain suits between "a foreign state . . . as plaintiff and citizens of a state or of different states," 28 U.S.C. § 1332(a)(4)—is no bar to a claim to recover misappropriated property.  As noted above, the rule only bars claims that, "either directly or indirectly, [are] for tax revenues, such that the whole object of the suit is to collect tax for a foreign revenue." *European Community I*, 355 F.3d at 131.  The revenue rule itself is a limited exception to the general rule that "[u]nder principles of

---

10. Contrary to Defendants' suggestion, the fact that certain Defendants are pursuing an administrative appeal of SKAT's denial of their refund requests does not preclude SKAT from initiating legal claims to recover for Defendants' fraud.  Defendants cite no authority that the administrative appeal process must be finished before SKAT can pursue civil remedies.  Nor should the Court permit Defendants to deny or delay SKAT's right to pursue valid legal claims by choosing to further perpetuate the fraud through the administrative appeals process.  In any event, Defendants' sample appeal fails to provide any evidence of Danish stock ownership.

comity governing this country's relations with other nations, sovereign states are allowed to sue in the courts of the United States." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 408-09 (1964) (holding that the National Bank of Cuba could bring claims for conversion and injunctive relief to protect government property).

To the extent that *Colombia* can be read, as Defendants suggest, to support a bright-line rule proscribing all claims by foreign states for damages suffered in a sovereign capacity as direct enforcement of a foreign revenue law, it went too far.  (Defs. Mem. 12-15); *see Colombia*, 531 F. Supp. 2d at 391.  Any such suggestion is refuted by *Banco Nacional de Cuba* and other cases discussed above allowing foreign sovereigns to sue in United States courts.  (*See* pgs. 7-8, *supra*.)  To the extent that any contrary suggestion can be gleaned from *Colombia,* it would, in any event, be *dicta*, as it was unnecessary for *Colombia's* holding that "claims brought by a foreign sovereign in a commercial capacity do not constitute the kind of direct enforcement of a foreign revenue law that is barred by the revenue rule."  *Id*. at 387.  Such *dicta* would also go well beyond the justification for the revenue rule recognized by the *Colombia* court that "the rule is not triggered by every foreign law," but "is targeted to those revenue-generating statutes that involve moral and political judgments."  *Id*. at 386.  It would also far exceed the *Canada* court's holding, on which *Colombia* is based, *see* 531 F. Supp. 2d at 385-87, that "Canada's claim for damages based on law enforcement costs [was] in essence an indirect attempt to have a United States court enforce Canadian revenue laws," in part because such costs "incurred to secure taxes for the sovereign are qualitatively different from the damages suffered by a private individual."  *Canada*, 268 F.3d at 131-32.

SKAT's claimed damages are quite different from the damages for law enforcement costs and the "sovereign" damages claims, including "lost liquor taxes," "erosion of stability and

13

credibility of the Colombian peso," and "expenses to stabilize unstable political situations in entire regions of Colombia," which the *Colombia* court found barred by the revenue rule.  531 F. Supp. 2d at 391-92, 391 n.5.  By contrast, SKAT seeks to recover the money that Defendants stole, a claim similar to the claims that the Philippines and Haiti made in their sovereign capacities to recover money stolen from their governments.  *See Philippines*, 806 F.2d at 355; *Philippines*, 862 F.2d at 1359; *Haiti*, 211 A.D.2d at 381.

In the *Philippines* cases, the Philippines government alleged that its former dictator Ferdinand Marcos "engaged in widespread and systematic theft of funds and properties that were . . . the property of the Philippine government and people," 806 F.2d at 348, and that "very large sums of money were amassed by the Marcoses" by these illegal means.  862 F.2d at 1363.  The Second and Ninth Circuits affirmed preliminary injunctions for the Philippines barring transfer of real estate in New York "purchased for the benefit of the Marcoses from the proceeds of moneys and assets stolen . . . from the Philippine government," 806 F.2d at 348, and of "stole[n] public money" that the Marcoses transported to, or invested or concealed in, California and Hawaii.  862 F.2d at 1359, 1363-64.  And in *Haiti*, the Haitian government sought "to recover monies allegedly embezzled by defendant and her husband . . . during the last six years . . . of his reign as dictator of Haiti" that the defendant used "to open [a] personal bank account" in New York, into which the defendant made deposits "traceable to Haitian government checks."  211 A.D.2d at 380-81, 384-85.  SKAT's claims mirror those of the Philippine and Haitian governments in those cases because SKAT seeks to recover funds that the Defendants stole from the Danish government.

## II.    SKAT ADEQUATELY PLEADED FRAUD, AIDING AND ABETTING FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS.[11]

The arguments that SKAT insufficiently pleaded its fraud, aiding and abetting fraud, and negligent misrepresentation claims are without merit.  SKAT has alleged facts that support a strong inference that the Defendants knew their refund claims were false and that they acted with fraudulent intent.  (Section II.A, *infra*.)  The pleadings sufficiently allege that each of the Defendants substantially assisted in the fraud (Section II.B, *infra*), and that the Authorized Representative and Incorporator Defendants made misrepresentations to SKAT (Section II.C, *infra*).

### A.    SKAT Has Adequately Pleaded The Defendants' Knowledge And Intent.

Defendants argue that SKAT failed to plead knowledge and intent with respect to its fraud and aiding and abetting fraud claims.[12]  Rule 9(b) of the Federal Rules of Civil Procedure requires a defrauded plaintiff to "plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotation omitted).  A plaintiff may satisfy this requirement either "by alleging facts to show that defendants had both motive and opportunity to commit fraud" or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner v.*

---

11.  Defendants cite only to New York law and do not suggest that the elements of the claims would be any different under Danish law to require a choice of law analysis.  SKAT presumes, solely for purposes of this motion, that there is no difference between New York and Danish law in this regard, but SKAT does not concede that New York law applies for all purposes in these actions.

12.  To state a claim for fraud under New York law, a plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages."  *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).  To state a claim for aiding and abetting fraud under New York law, a plaintiff must allege "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the fraud."  *Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*, 64 A.D.3d 472, 476 (1st Dep't 2009) (internal quotation omitted).

*Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).  "In order to raise a strong inference of scienter through 'motive and opportunity,' plaintiffs must allege defendants benefitted in some concrete and personal way from the purported fraud."  *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 518 (S.D.N.Y. 2016) (internal quotation omitted).

        **1.**      **SKAT's factual allegations.**

        SKAT's pleading provides ample factual allegations to create a strong inference of scienter.  (*See* pgs. 3-6, *supra*.)  The large sums of money in question provide an obvious motive and Defendants' respective roles in submitting fraudulent claims provided the opportunity to steal from SKAT.  While the precise amount of stolen money ultimately obtained by each Defendant requires discovery, the gross amounts stolen by, and shared among, Defendants establishes that they benefitted in a concrete and personal way.  Thus, SKAT's allegations show the Defendants' "motive and opportunity to commit fraud."  *Lerner*, 459 F.3d at 290-91.  The Court's decision in *Minnie Rose* is on point.  169 F. Supp. 3d at 504.  In *Minnie Rose*, the defendants allegedly submitted fraudulent invoices to the plaintiff.  *Id.* at 508.  The defendants moved to dismiss, in part, on the ground that the plaintiff failed to plead facts giving rise to a strong inference of fraudulent intent.  *Id.*  The Court disagreed, explaining that "[t]he scheme alleged in the complaint is exceedingly simple and the Defendants' motive and opportunity clear:  Defendants allegedly had exclusive access to the invoices . . . before presenting them to Plaintiff, and were able to enrich themselves as a result."  *Id.* at 518.  Here, the Defendants' scheme was similarly simple and their motive and opportunity equally clear:  the Defendants submitted the fraudulent refund requests to SKAT, and enriched themselves at SKAT's expense as a result.

        The circumstances of the fraud also provide compelling circumstantial evidence of Defendants' intent.  An investor might be forgiven for incorrectly claiming ownership of a small shareholding, but the notion that anyone associated with a one-participant 401(k) plan with strict

contribution limits could innocently claim that the plan owned many millions of dollars worth of shares that it did not own strains credulity.  Indeed, in their motion, Defendants themselves have asserted additional facts and circumstances supporting a strong inference of fraud.  As discussed above, Defendant Bradley London Plan admits that it was established in September 2014, just two months before the dividend date for the first dividend it claimed to have received, as a one-participant 401(k) plan, for which the annual contribution was less than $60,000.  (Allison Decl. Ex. 4-A at 6-7; Ex. 5-A at 7-8.)  Yet, Defendant Bradley London Plan asks the Court to believe that it nonetheless owned millions of shares, which would have been worth about $1 billion, in Danish companies that formed the basis of its claims for over $11 million in refunds from SKAT.[13]

Other indicia of fraud include the curious circumstances of some of the Authorized Representative and Incorporator Defendants.  Defendant Roger Lehman signed powers of attorney for 48 of the 277 United States entities that pretended to own shares in Danish-listed companies and that fraudulently claimed tax refunds from SKAT.  (Aria Compl. ¶ 45.)  Lehman signed at least thirteen of those in the four-day period between October 20, 2014 and October 24, 2014, and another 35 in the five-day period between March 5, 2015 and March 10, 2015.  (*Id.*)  And during a six-week period at the end of 2014, Defendant Crescenzo participated in incorporating the companies associated with fifteen of the claimants for which Defendant Lehman signed the powers of attorney.  (*Id.* ¶ 41.)

---

13.  As another example, Defendant SPKK LLC 401K Plan, which in its single false refund request to SKAT sought the smallest refund of any of the Plan Defendants, claimed to have owned over 3.6 million shares of the Danish-listed company TDC A/S, and to have earned a purported dividend of over $850,000.  (SPKK Complaint (Allison Decl. Ex. 59) ¶ 53.)

2.      **The arguments that SKAT has not pleaded Defendants' knowledge and intent fail.**

In arguing that SKAT's pleadings do not sufficiently allege their knowledge and intent, Defendants ignore that the Court must draw all reasonable inferences in SKAT's favor and analyze SKAT's allegations collectively. *See Employees' Retirement System of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) ("[T]he standard on a motion to dismiss is 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'").

First, the bald assertion that "SKAT fails to plead what statements of material fact were false or even why they were false," (Defs. Mem. 19), overlooks the critical allegations that Defendants did not own the shares and dividends they pretended to own.  (Bradley London Compl. ¶¶ 3-5, 10, 36, 37, 48, 49.)  The Court previously recognized that these allegations put the Defendants on notice of which statements were allegedly false and why they were false.  (*See* n.2, *supra*.)

Second, by arguing that SKAT fails to explain how Defendants knew they did not own the shares or how they obtained credit advices from their brokers or custodians, (Defs. Mem. 21), Defendants seek a level of detail that can only follow discovery, not precede it.  SKAT has alleged that Defendants pretended that the Plan Defendants owned shares they did not own, in amounts far beyond the limited means of a 401(k) plan.  (*See* pgs. 5-6, *supra*.)  Further details as to how the Defendants perpetrated their fraud is information solely within their possession and which SKAT cannot be expected to know at the pleading stage.  *See Minnie Rose*, 169 F. Supp. 3d at 517 (Rule 9(b)'s requirements "may be relaxed when the information is exclusively within

the defendant's knowledge as long as the plaintiff has adequately set forth the factual basis for the allegations") (internal quotation omitted).

Third, the assertion that the "Complaints do not allege that the Plans had any contact *at all* with each other, directly or indirectly, much less that they conspired together to submit false refund claims," (Defs. Mem. 22), is beside the point.  SKAT has not—yet—pleaded a separate conspiracy claim, so it is not required to allege any contact between the Plans.  In any event, Defendants' argument ignores that the same Authorized Representative Defendants, such as Defendant Roger Lehman, signed powers of attorney on behalf of multiple Plan Defendants authorizing the payment agents to submit the substantially identical fraudulent refund requests to SKAT, (Aria Compl. ¶ 45), and the same Incorporator Defendants, such as Defendant Gavin Crescenzo, incorporated many of the entities related to the Plan Defendants.  (*Id.* ¶ 40-41.) Indeed, it also ignores that in many instances, multiple Plan Defendants provided the same address to SKAT in their fraudulent refund requests.  (*Compare* Aria Compl. ¶ 17 *with* Belforte Compl. (Allison Decl. Ex. 41) ¶ 17 *and* Costello Compl. (Allison Decl. Ex. 43) ¶ 17.)

Finally, Defendants' suggestion that SKAT's allegations "more compellingly" give rise to the inference that the Plan Defendants invested "in a common European dividend arbitrage investment strategy" strains credulity.  (Def. Mem. 22.)  Defendants offer no credible scenario under which they participated in a legitimate dividend arbitrage strategy, and the administrative appeals they submitted in support of their motion likewise lack any basis to draw such an inference.  (Allison Decl. Ex. 5-A.)  Moreover, as alleged in the Complaints, law enforcement authorities in at least three jurisdictions are investigating the fraud, and SOIK has brought criminal charges against at least three individuals.  (Bradley London Compl. ¶ 8.)  Finally, when combined with the other circumstances surrounding the fraud, the magnitude of the Plan

Defendants' claimed shares ownership of shares, generating hundreds of millions of dollars of dividends, reinforces the inference that the refund claims were fraudulent.

> ### B.  SKAT Has Pleaded That Each Defendant Substantially Assisted the Fraud.

Defendants argue that SKAT failed to plead its aiding and abetting fraud claims because it failed to allege substantial assistance.  (Defs. Mem. 23-24.)  To plead substantial assistance requires alleging that "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."  *McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002).

SKAT has sufficiently pleaded that each of the Defendants substantially assisted in the underlying fraud.  The Plan Defendants substantially assisted the fraud by submitting the fraudulent refund requests to SKAT; the Authorized Representative Defendants substantially assisted the fraud by signing the powers of attorney authorizing the payment agents to submit the fraudulent refund requests to SKAT; and the Incorporator Defendants substantially assisted the fraud by incorporating the entities associated with the Plan Defendants for the purpose of submitting fraudulent refund requests to SKAT.  (Aria Compl. ¶¶ 33-46.)  In many instances, the Plan Defendant listed the home address of the individual Authorized Representative or Incorporator Defendant (or their relatives) in its fraudulent refund request to SKAT.  (*See e.g.*, Aria Compl. ¶¶ 17, 19 (Incorporator Defendant Crescenzo); M2F Wellness Compl. (Allison Decl. Ex. 31) ¶¶ 17, 18 (Authorized Representative Defendant Mitchell Protass).)

Nor can the participation of the Authorized Representative and Incorporator Defendants be ignored as "ministerial acts."  (Defs. Mem. 23-24.)  The "critical test" is not "whether the alleged aiding and abetting conduct was routine, but whether it made a substantial contribution to the perpetration of the fraud."  *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257

20

(S.D.N.Y. 2005); *see also Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 652 F. Supp. 2d 495, 511 (S.D.N.Y. 2009) (denying summary judgment because even if defendant "only performed clerical and ministerial tasks," the "'critical test for substantial assistance is not whether the alleged aiding and abetting conduct was routine, but whether it made a substantial contribution to the perpetration of the fraud'" (quoting *Winnick*, 406 F. Supp. 2d at 257)).

In *Winnick*, the court rejected a similar argument that merely negotiating and drafting contracts did not amount to substantial assistance.  406 F. Supp. 2d at 257.  In denying the motion to dismiss, the Court found the allegations of substantial assistance sufficient because the defendant was "alleged to have been directly involved in bringing about—including negotiating—transactions, which while not themselves necessarily fraudulent, are alleged to have been carried out solely for the purpose of" the fraud.  *Id.*; *see also Unicredito Italiano SPA v. JP Morgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003) (plaintiff sufficiently pleaded substantial assistance where plaintiff alleged defendant "helped structure the transactions" that enabled the fraud).  So too here, the Plan Defendants could not have applied for and received their fraudulent refunds without the steps performed by the Authorized Representative and Incorporator Defendants, steps that could only have been taken to further the fraud.

### C. SKAT Pleaded False Representations Of Material Fact By The Authorized Representative and Incorporator Defendants.

Defendants mischaracterize SKAT's allegations concerning the Authorized Representative and Incorporator Defendants to argue that SKAT did not allege any misrepresentations by them.  (Defs. Mem. 24-25.)  Defendants argue that the Authorized Representative and Incorporator Defendants are mere co-agents of the payment agents, and that the Court's holding in *In re Parmalat Securities Litigation* that "[a]n agent generally is not liable

21

for the acts of co-agents"[14] means that the Authorized Representative and Incorporator Defendants are not liable for the fraudulent refund claims.  (Def. Mem. 25.)

SKAT's allegations are different from those asserted in *Parmalat*.  In *Parmalat*, the plaintiff alleged that the United States member of the Deloitte network of professional services firms was liable for the Italian member firm's alleged acts because "each Deloitte member firm was an agent of the other and that Deloitte USA effectively acted as the functional U.S. arm of Deloitte [Italy]."  377 F. Supp. 2d at 405-06.  The Court found these allegations insufficient to plead Deloitte USA's vicarious liability because the "plaintiff d[id] not appear to claim that Deloitte USA was a principal" and that Deloitte USA could not "be said to have controlled Deloitte Italy if, as [was] alleged, Deloitte Italy was in control of Deloitte USA."  *Id.* at 406.  In contrast, SKAT alleges that the payment agents submitted the fraudulent refund claims on behalf of all of the Defendants, not that the Authorized Representative and Incorporator Defendants were just co-agents of the Plan Defendants with the payment agents.  (Aria Compl. ¶¶ 3-5, 10, 36, 37, 48, 49.)

Where defendants are alleged to be so closely connected as the Defendants in each action are alleged to be here, courts have found it unnecessary for the plaintiff to attribute specific wrongful acts between them at the pleading stage.  For example, in *Minnie Rose*, the Court found that "there [was] no genuine question regarding which allegations of fraud involved which Defendants because Plaintiff claim[ed] that Elva Green was a single purposed entity that was closely held by Yu and both engaged in the same fraudulent conduct."  169 F. Supp. 3d at 518. In *Buyers and Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, the Court noted that the defendants' argument that the pleading failed to specify which among the two of them

---

14.  377 F. Supp. 2d 390, 406 (S.D.N.Y. 2005) (applying Illinois agency law).

committed which acts "barely passe[d] the straight face test" because one was the "founder, investor, owner and CEO" of the other.  575 F. Supp. 2d 499, 508 n.3 (S.D.N.Y. 2008).

## III.  THE UNJUST ENRICHMENT, MONEY HAD AND RECEIVED, AND PAYMENT BY MISTAKE CLAIMS ARE NOT DUPLICATIVE.

The unjust enrichment claim is not duplicative of the fraud claim, and SKAT's claims for money had and received and payment by mistake claims are not duplicative of SKAT's unjust enrichment claim.[15]  (Defs. Mem. 25-26.)  SKAT properly pleaded its claim for unjust enrichment, and its claims for money had and received and for payment by mistake as alternative grounds to recover the money the Defendants received from SKAT in the event that its fraud claims fail because, for instance, it is unable to prove that Defendants acted with the requisite scienter.  *See Obeid v. Mack*, 14CV6498-LTS-MHD, 2016 WL 5719779, at *11 (S.D.N.Y. Sept. 30, 2016) (plaintiff is "permitted to alternative theories of recovery" and based on the facts alleged, the unjust enrichment claim was "not entirely duplicative of [plaintiff's] other claims."); *see also Aramony v. United Way of America*, 949 F. Supp. 1080, 1084 n.2 (S.D.N.Y. 1996) (allowing plaintiff to bring unjust enrichment claim as alternative theory of relief); *Allstate Ins. Co. v. Aminov*, No. 11 CV 2391 (MKB), 2014 WL 527834, at *6-7 (E.D.N.Y. Feb. 7, 2014) (holding that plaintiff sufficiently pleaded both fraud and unjust enrichment claims based on submission of fraudulently overstated claim forms).  Defendants' motion to dismiss the fraud-

---

15. To state a claim for unjust enrichment under New York law, a plaintiff must plead that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by plaintiff.  *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  To state a claim for money had an received under New York law, a plaintiff must plead "that (1) the defendant received money belonging to the plaintiff; (2) the defendant benefited from receipt of the money; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money."  *In re Estate of Witbeck*, 245 A.D.2d 848, 850 (3d Dep't 1997).  To state a claim for payment by mistake under New York law, a plaintiff must plead that (1) plaintiff made a payment under a mistaken apprehension of fact, (2) that the defendant derived a benefit as a result of this mistaken payment, and (3) that equity demands restitution by the defendant to the plaintiff.  *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG)(ARL), 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010).

related claims is based solely on the purported lack of allegations of defendants' knowledge and intent.  Because those elements are not necessary to establish liability for unjust enrichment, money had and received, and payment by mistake, such claims are an entirely proper, non-duplicative form of pleading.

Nor are SKAT's unjust enrichment, money had and received, and payment by mistake claims duplicative of each other.  While "all three are claims for restitution premised on the principal that recovery is to be had *ex aequo et bono*, according to what is equitable and good," *T.D. Bank, N.A.*,[16] they are separate causes of action under New York law that courts routinely allow to be pleaded together.  *See, e.g.*, *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 23 F. Supp. 3d 242, 269 (S.D.N.Y. 2014) (denying motion to dismiss unjust enrichment and payment by mistake claims); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 418-19 (S.D.N.Y. 2013) (denying motion to dismiss unjust enrichment and money had and received claims pleaded in the alternative to breach of contract claim); *Hoyle v. Dimond*, 612 F. Supp. 2d 225, 231 (W.D.N.Y. 2009) (plaintiff sufficiently pleaded claims for unjust enrichment and money had and received); *In re Estate of Witbeck*, 245 A.D.2d at 850 (same).

Neither of the cases Defendants rely on actually dismissed a claim as duplicative of another.  (Defs. Mem. 25-26.)  Instead, in *J.C. Penney Corp., Inc. v. Carousel Center Co., L.P.*, the court dismissed plaintiff's money had and received and unjust enrichment claims because they are quasi-contractual remedies and the parties agreed that their dispute was governed by an enforceable lease.  635 F. Supp. 2d 126, 137-38 (N.D.N.Y. 2008).  In *United States v. Albinson*, the court dismissed plaintiff's unjust enrichment and payment by mistake claims, each without prejudice, because the plaintiff failed to allege that the defendant "benefitted monetarily from the

---

16.  2010 WL 4038826, at *4.

alleged overpayment."  Civ. No. 09-1791 (DRD), 2010 WL 3258266, at *18 (D.N.J. Aug. 16,

2010).

<u>**CONCLUSION**</u>

For the reasons set forth above, SKAT respectfully requests that the Court deny the

Defendants' Motion to Dismiss.

Dated:  New York, New York
       October 1, 2018

                               HUGHES HUBBARD & REED LLP

                               By:   /s/ Sarah L. Cave
                                  William R. Maguire
                                  Marc A. Weinstein
                                  Sarah L. Cave
                                  John T. McGoey
                               One Battery Park Plaza
                               New York, New York 10004-1482
                               Telephone: (212) 837-6000
                               Fax:  (212) 422-4726
                               bill.maguire@hugheshubbard.com
                               marc.weinstein@hugheshubbard.com
                               sarah.cave@hugheshubbard.com
                               john.mcgoey@hugheshubbard.com

                               *Counsel for Plaintiff SKAT (Customs and Tax*
                               *Administration of the Kingdom of Denmark)*