

**Caplin & Drysdale, Chartered**
600 Lexington Avenue, 21st Floor
New York, NY 10022-7619
212-379-6000  212-379-6001 Fax
www.caplindrysdale.com

212.379.6060  Direct
mallison@capdale.com

January 23, 2019

**Via ECF and Hand Delivery**

Honorable Lewis A. Kaplan, United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re:    <u>In re: Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Litigation, Docket Number 18-md-2865 (LAK)</u>

Dear Judge Kaplan:

      We write in reply to the comments we have received to the proposed order with respect to the Lead Counsel role as filed on December 18, 2018 [ECF Dk. #52]. Although the Court did not prescribe a reply process, we received no objections from plaintiff's counsel and those defense counsel who responded to our request to do so. We also thought a reply submission would advance the hearing with the Court scheduled for January 24, 2019.

      First, we have had discussions with several defense counsel who expressed concern about the notion of fee sharing in and of itself rather than any particular allocation. In response, with respect to those with whom we discussed this issue, we have agreed that any fee sharing determination would be deferred until the close of the pretrial process at which time such counsel would be better positioned to assess whether and to what extent fee sharing was appropriate. We would propose to modify the proposed order accordingly and to be applicable to all defendants.

      Second, we had discussions with plaintiff's counsel about better defining a process for addressing when and if a member of the defense counsel group has agreed or objected to a proposed action by the Lead Counsel. In particular, the concern is that some defense counsel may be slow to respond, or refuse to respond, to a requested action by Lead Counsel. In that scenario, it is unclear what type of representation may be made by Lead Counsel to plaintiff's counsel, including whether a non-response after some period of time could be treated as a deemed consent or objection. We have no preference in how that process should operate, but agree that clear guidelines for Lead Counsel are most important to avoid inadvertent misrepresentations.



Third, we acknowledge the January 11, 2019 filing by Mr. Hanamirian [ECF DK. 65] for which we have expressed to him directly, by way of letter dated January 14, 2019, our dismay for what we consider to be a troubling submission (for which we had no advance notice). Mr. Hanamirian objects to the entirety of the proposed order (for which of course he is entitled to do) framed on the basis of an apparent conflict of interest between our clients and his clients. However, Mr. Hanamirian's submission fails to address that the overwhelming majority of our clients are his *former clients* to whom a continuing duty of loyalty exists under Rule 1.9 of the New York Rules of Professional Conduct (the "Rules").[1] Nonetheless, Mr. Hanamirian's submission includes a number of references to unfounded purported facts or inferences about our clients which he relies on to establish distinctions from his clients and to create the presence of the conflict without explaining how, in doing so, he can compromise the position of his former clients. We also expressed concerns regarding several other elements of his submission, including the unauthorized disclosure of joint defense communications. Given these concerns, we requested an immediate explanation from Mr. Hanamirian and the withdrawal of his submission.

Mr. Hanamirian replied to me by email on January 15, 2019 (and copied another member of my Firm who is not involved in these cases) declining to withdraw his submission. Mr. Hanamirian explained that he did not rely on any of his former clients' confidential information (for which he says he had none) but that his submission was based only on his "discerning facts from public news sources, conversations with investigative reporters, and from [his] 6 or 7 years of involvement in these matters." He further states that he offered these "suggested" facts "to show a potential for conflict and the issues I see with the role of Lead Counsel." Mr. Hanamirian also states that "I can be wrong about the facts with respect to your clients, but I was careful to state that I did not know any assertion to be a fact." Mr. Hanamirian did not respond to the other concerns we raised.

Respectfully, we disagree with Mr. Hanamirian's characterization of his assertions, many which appear to be unqualified statements and which include gratuitous commentary about the implications of these "suggested" facts.[2] Regardless, the bigger picture issue is whether a conflict actually exists. As noted in his email to me, Mr. Hanamirian states that there is only a "potential" for conflict. But his January 11 submission suggests otherwise when he says "There is a conflict with the Sanjay Shah Defendants …" [at 4]. He also states that "We are, or will be adverse to one other [sic], even if not in this litigation, …" [at 3] and later comments that the Lead Counsel's "clients['] interests are different and likely adverse to those of my clients." [at 5]. We cannot

---

[1] Rule 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The commentary to Rule 1.9 also provides: "Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent."

[2] If the Court wishes for us to address each of the incorrect statements relating to our clients in Mr. Hanamirian's submission we will of course do so at the hearing on January 24, 2019. But only to avoid any misunderstanding, Mr. Hanamirian's assertion of the number of our clients (and with whom they traded and their purported knowledge or involvement) [at 1-2] is baseless. Of course, there is no public information about the trustees of our U.S. pension plan clients to whom he refers; the complaints in these cases only reference the authorized representatives (whom we also represent) so there is no foundation for that discussion in his submission. And Mr. Hanamirian does not take into account the dozens of plan participants in / beneficiaries of each of these plans whom we also represent.



discern whether in fact a conflict exists or not at this point. If an actual conflict exists, it is not clear how Rule 1.9 is avoided. If no conflict yet exists (i.e., there is only a potential for conflict), then Mr. Hanamirian's current clients are in the same shoes as every other defendant for whom a conflict determination will be identified (or not) as the cases unfold, but which we do not believe has any relevance to the Lead Counsel's functions in these cases.[3] In any event, we believe it would be helpful for the Court to confirm that the Lead Counsel may perform his role despite the presence of potential or actual conflicts, or if the Court otherwise prefers to direct a different approach to better ensure efficiency and fairness in these proceedings.[4]

As appropriate, we will be prepared to address any of the foregoing at the hearing on January 24, 2019.

Respectfully submitted,

Mark Allison, Esq.

cc: All counsel of record via ECF.

Via First Class Mail, without enclosures:

The Raubritter LLC Pension Plan

---

[3] With respect to the substantive issue of whether Lead Counsel can fairly perform his duties in light of actual or potential conflicts among defendants, I note that the role of Lead Counsel, at least as proposed, is administrative and focused on coordination and facilitation. Prior to such designation, I operated similarly on behalf of much of the defense group, despite occasional differences in views, strategies and positions, which did not appear to constrain or prejudice any other defendants or their counsel. Although Mr. Hanamirian posits that the Lead Counsel would act as an advocate for his clients and prevent him from being able to argue his positions or objections, that is not what is proposed by the Lead Counsel proposed order. Indeed, it is anticipated that Lead Counsel would have no discretion or authority to act for any defendants in that capacity and that each defense counsel would retain their own rights to communicate with plaintiff's counsel, lodge their own objections and make their own arguments.

[4] Despite Mr. Hanamirian's response, in the meantime I have continued to perform the Lead Counsel role and communicate with him (and all defense counsel) regarding appropriate issues in this litigation.