# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                                      Plaintiff,<br><br>vs.<br><br>THE BRADLEY LONDON PENSION<br>PLAN & DOSTON BRADLEY,<br><br>                                      Defendants. | Civil Action No. 18-cv-04047<br><br>Honorable Lewis A. Kaplan<br><br>April 24, 2020<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants The Bradley London Pension Plan ("**Bradley London Plan**") and Doston Bradley ("**Bradley**") as follows:

I.    <u>**INTRODUCTION**</u>

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

[1]    At the time of the events alleged in this Amended Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders that meet certain

qualifications.

4.      The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, did not earn the dividends they claimed to have earned, and were

not entitled to the tax refunds they claimed.  These applications were also fraudulent because the

claimants falsely represented that they met the qualifications set forth in the double taxation treaty

between Denmark and the United States for a full repayment of the tax withheld on dividends.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and were

entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and

distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During

the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents

on behalf of 277 pension plans in the United States, including Defendant Bradley London Plan, as

well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, had earned substantial dividend income on their shares, and were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax, while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a. The Authorized Representatives of the claimants, such as Defendant Bradley, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

     b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives; and

     c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these false representations would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 69,217,447.21, or at least $11,135,000 (US) plus interest.

## II.    <u>JURISDICTION & VENUE</u>

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.    **PARTIES**

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Amended Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Bradley London Plan is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 31 W. 21st Street, Apartment 2N, New York, NY 10010, USA. On information and belief, each participant, or member of the Defendant Bradley London Plan is a citizen of a state of the United States.  At all times material to the allegations in this Amended Complaint, Defendant Bradley London Plan purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident in the United States of America for purposes of U.S. taxation.

18.    Defendant Bradley is a citizen of a State of the United States.  At times relevant to the allegations in this Amended Complaint, Defendant Bradley resided at 31 W. 21st Street, Apartment 2N, New York, NY 10010, USA, the same address listed by Defendant Bradley London Plan in its claims to SKAT.  At all times material to the allegations in this Amended Complaint, Defendant Bradley was the sole participant in and served as Authorized Representative for Defendant Bradley London Plan.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

19.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.   A double taxation treaty between Denmark and the United States[2] ("**the Treaty**") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation.  In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund.  For the reasons set forth in further detail below, the pension plan claimants, including Defendant Bradley London Plan, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

23.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented were qualified pension plans, that they had shareholdings in Danish companies and

---

2.   Protocol Amending Tax Convention with Denmark, U.S.-Den. art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.     The Fraudulent Scheme**

25.     As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 33 through 57 below.

**1.     The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

     i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

     ii.     the amount of the tax refund claim;

     iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

     iv.     the bank account to which SKAT should pay the claim;

     c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

     d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

     e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Bradley London Plan, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Bradley London Plan represented that Defendant Bradley was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Bradley London Plan claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that entity with respect to the claim.  Defendant Bradley London Plan represented that non-party Syntax was its agent and had authority to act on its behalf with respect to Defendant Bradley London Plan claims.

37.     Each of the entities represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Bradley London Plan made sixteen (16) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 69,217,447.21, or at least $11,135,000 (US).  These refund claims were submitted on the following dates: April 13, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 28, 2015; April 30, 2015; and May 15, 2015.

38.     In fact, Defendant Bradley London Plan did not own the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     In addition to falsely representing that it owned the shares that were the subject of the refund claims, Defendant Bradley London Plan falsely represented to SKAT in each refund claim that it was a qualified U.S. pension plan entitled to a full refund under the Treaty.  This representation was false because Defendant Bradley London Plan did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

40.     Far from being a qualified pension plan, Defendant Bradley London Plan was a sham entity sponsored by a shell company, non-party London Rocco LLC.  Defendant Bradley London Plan was created solely for the purpose of submitting false refund claims to SKAT to advance the Defendants' fraudulent scheme.  London Rocco LLC conducted no trade or business and had no employees.  Further, London Rocco LLC and Defendant Bradley London Plan were both established shortly before Defendant Bradley London Plan submitted its first refund claim to SKAT.  As a result, Defendant Bradley London Plan cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code to be a qualified pension plan.

41.     Defendant Bradley London Plan's representation that it was a qualified pension plan was false because it did not operate for the exclusive benefit of the sponsoring entity's employees and their beneficiaries.  London Rocco LLC did not conduct any trade or business, did not have any employees, and did not operate exclusively for the benefit of its employees.  Rather, Defendant Bradley London Plan was maintained principally for the benefit of its custodians, Solo Capital Partners LLP and Old Park Lane Capital PLC, and/or other entities and individuals who were participants in the fraud.  After SKAT paid the amount requested in Defendant Bradley

Case 1:18-md-02865-LAK Document 322-9 Filed 04/24/20 Page 12 of 20

London Plan's refund claims, the plan subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

42. Defendant Bradley London Plan's representation that it was a qualified pension plan was also false because it was not established with the intent that it be a "permanent" program. Defendant Bradley London Plan was created for the sole purpose of serving as a vehicle for making fraudulent refund claims to SKAT, and was only intended to operate for as long as the fraudulent scheme was undiscovered and ongoing.

43. Defendant Bradley London Plan's representation that it was a qualified pension plan was also false because it was not properly funded. As an entity established by a shell corporation that conducted no trade or business and therefore had no employees, Defendant Bradley London Plan cannot have obtained funding from a proper source and cannot have complied with the contribution rules in section 401(a) of the Internal Revenue Code. To the extent that Defendant Bradley London Plan received funding from sources outside of its plan sponsor, such activity would similarly violate the funding requirements of the Internal Revenue Code and disqualify Defendant Bradley London Plan from being a qualified pension plan.

44. Defendant Bradley London Plan also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

45. Based on the false representations in the refund claims described in paragraphs 37 through 44, SKAT made payments totaling DKK 69,217,447.21, or at least $11,135,000 (US), to Defendant Bradley London Plan on the following dates: April 24, 2015; May 8, 2015; May 27, 2015; and July 3, 2015.

46.     On information and belief, Defendant Bradley caused Defendant Bradley London Plan's fraudulent refund claims to be submitted to SKAT, evidenced in part by the fact that Defendant Bradley London Plan used Defendant Bradley's New York home address in its claims to SKAT.  Defendant Bradley exerted control over Defendant Bradley London Plan as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Bradley was the sole participant in at least seven different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

47.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

48.     Defendant Bradley executed at the direction of, and on behalf of, Defendant Bradley London Plan a "Limited Power of Attorney" dated March 27, 2015, that granted to Payment Agent Syntax authority to be Defendant Bradley London Plan's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Bradley described himself as the "Authorized Representative" of Defendant Bradley London Plan.

49.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Bradley and be subject to his direction and control with respect to Defendant Bradley London Plan's claims to SKAT.  Defendant Bradley executed the Limited Power of Attorney with knowledge that the plan was a sham, was established by a shell entity with no business or trade or employees, was not properly funded, was not a permanent program, was

not established for the exclusive benefit of its sponsor's employees, and was not entitled to a refund under the Treaty.

### 4. The Role of the Payment Agents

50. The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

51. By means of the Power of Attorney described in paragraphs 47-48 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

52. With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above. Payment Agent Syntax's cover letter, submitted at the direction of and on behalf of Defendants Bradley London Plan and Bradley, also contained the false statement that the plan was a "qualifying US pension fund" within the meaning of the Treaty, and was therefore entitled to a "complete refund of Danish Dividend Tax." Additionally, the documentation submitted with the cover letter falsely represented to SKAT that Defendant Bradley London Plan was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

53. In connection with each Claim Form, the Payment Agent:

a. provided its email address as the contact address for the claimant on whose behalf it was acting;

b. signed and stamped the form, and stated it was applying on behalf of the claimant;

c. enclosed the Power of Attorney executed by the claimant's authorized representative; and

d. requested that SKAT pay the claim to its bank account.

13

54.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  Upon information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

55.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a broker-custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

56.     By way of example, with respect to Defendant Bradley London Plan, one example of a "credit advice":

        a.      is made out by Solo Capital Partners LLP;

        b.      is dated March 10, 2015;

        c.      purports to certify Defendant Bradley London Plan's ownership of 2,522,928 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the Copenhagen Stock Exchange; and

        d.      states an International Securities Identification Number ("**ISIN**") for TDC A/C shares as "DK0060228559".  An ISIN is a twelve character alpha-numerical code that uniquely identifies securities for trading and settlement purposes.

57.     Defendant Bradley London Plan, which was not a qualified U.S. pension plan for purposes of the Treaty, never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

#### (Fraud – Against Both Defendants)

58.     SKAT repeats and realleges paragraphs 1 through 57 above as if fully set forth herein.

59.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28 through 30, 37 through 44, and 55 through 57 to support claims for withholding tax refund payments.

60.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

61.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 69,217,447.21, or at least $11,135,000 (US), and thereby suffered damages of that amount, plus interest.

62.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

#### (Aiding and Abetting Fraud – Against Both Defendants)

63.     SKAT repeats and realleges paragraphs 1 through 62 above as if fully set forth herein.

64.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

65.     As alleged in paragraphs 25 through 57 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

66.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

67.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in 25 through 57 above.

68.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

69.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against Both Defendants)

70.     SKAT repeats and realleges paragraphs 1 through 69 above as if fully set forth herein.

71.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

72.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

73.     SKAT's mistaken belief was material to its decision to pay the claims.

74.     SKAT suffered a loss as a result of its mistaken payments.

75.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

78.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

79.     SKAT suffered a loss because of the Defendants' unjust enrichment.

80.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

83.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

84.     SKAT repeats and realleges paragraphs 1 through 83 above as if fully set forth herein.

85.     In submitting claims for withholding tax refund payments, Defendants had a duty to SKAT to provide claims information that was truthful, accurate, and complete in all material respects.

86.     Defendants made material misstatements described in paragraphs 28 through 30, 37 through 44, and 55 through 57 above in connection with the withholding tax refund claims they submitted or caused to be submitted to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

87.     Defendants intended their material misstatements to induce SKAT to rely upon them, and defendants expected SKAT to rely upon them.

88.      SKAT reasonably relied on the misstatements while reviewing defendants' claims, and as a direct and proximate result incurred damages of DKK 69,217,447.21, or at least $11,135,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.   For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.   For Counts I and II, punitive damages.

4.   The costs of this action.

5.   All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 /s/ Marc A. Weinstein
William R. Maguire
Marc A. Weinstein
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)